Bob COOP and Rhonda Coop,
Plaintiffs–Appellees,

v.

CITY OF SOUTH BEND, David Shock
and Vincent Laurita,
Defendants–Appellants.

No. 80–1029.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1980.

Decided Dec. 12, 1980.

James A. Masters, Asst. City Atty., South Bend, Ind., for defendants–appellants.

J. David Keckley, South Bend, Ind., for plaintiffs–appellees.

Before BAUER, WOOD and CUDAHY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This is an appeal from an award of attorney's fees under the Civil Rights Attorneys Fees Awards Act, 42 U.S.C. § 1988. The jury returned a verdict against defendants–appellants, City of South Bend and South Bend Police Officers Shock and Laurita, in the amount of $510 as compensation for their violation of Bob and Rhonda Coop's Fourth Amendment rights. The district court awarded attorney's fees of $6,000 which appellants contend is excessive and unwarranted. We find no abuse of discretion and affirm the district court order.

The South Bend Police Department had obtained a warrant to search the home of appellees' neighbors, Paul and Dawn Watson, for narcotics. In order to minimize the possibility of violence, it was decided to gain entry by subterfuge with police officers posing as representatives of the Indiana & Michigan Electric Company.[1] Under this guise and in furtherance of their plan, police officers Shock and Laurita requested and obtained entry into the Coops' home, apparently to show a neighborhood pattern. Immediately thereafter, the police officers similarly gained entry to the Watsons' home using the same ruse and executed the search warrant.

Appellees brought suit in the Superior Court of the State of Indiana against the City of South Bend, several police officers, an unnamed informant and the Indiana & Michigan Electric Company. Appellants petitioned for removal to the United States District Court for the Northern District of Indiana stating that the action "arises un-der the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983...." The petition was granted and a jury trial on the merits followed. Directed verdicts were granted to Indiana & Michigan Electric Company and three police officers who did not enter the plaintiffs' residence, and the complaint against the informant was dismissed.

At the conclusion of the evidence, the district court ruled that as a matter of law punitive damages could not be recovered. A verdict was returned against the three remaining defendants and compensatory damages were assessed in the amount of $510.

The judgment was entered on October 25, 1979. On that date, the court also directed that if counsel for the Coops wished to request attorney's fees, it would be necessary to file by November 13, 1979, and that fees would be limited to claims against the three defendants against whom they prevailed, specifically excluding the Indiana & Michigan Electric Company. Appellants were directed that a response would have to be filed "by December 3, 1979" and that no extensions of time would be granted.

On November 13, 1979, appellees' counsel filed a request for $13,800 in fees, enumerating fourteen activities in connection with the Coops' suit and the hours expended on each. The total request was for 184 hours at the rate of $75 per hour. On December 3, 1979, no response having been filed, the district court ordered an award of $6,000, representing 120 hours at the rate of $50 per hour. The order specifically disallowed hours which represented work done in furtherance of the action against the Indiana & Michigan Electric Company as well as reducing the number of trial counsel and the rate. The district court indicated that the award was based on the total record and the guidelines announced in *Waters v. Wisconsin Steel Works*, 502 F.2d 1329 (7th Cir. 1974).

---

1. The police concern for violence was more than routine. It was known to the police that the Watsons kept weapons in their home along with two Great Danes trained as "attack" dogs.

Paul Watson had previously told one of the police officers involved that if police officers entered his home, he would "blow their heads off."

On December 4, 1979, appellants filed a request to reconsider the award of attorney's fees and a request for a hearing, stating that on December 3, 1979, at the close of business, they had not completed the brief opposing attorney's fees and were "in process of requesting leave to file the brief one day late...." The trial judge considered the motion and supporting memorandum, over appellees' objection that it was untimely, and subsequently entered an order affirming that after careful review of both the memorandum and record, the award was well within the law as announced in *Dawson v. Pastrick*, 600 F.2d 70 (1979), the most recent Seventh Circuit authority.

The Civil Rights Attorneys Fees Awards Act, 42 U.S.C. § 1988, provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of costs." That this discretion is somewhat narrow is apparent from the legislative history:

> A party seeking to enforce the rights protected by the statutes covered by S.2278, if successful, "should ordinarily recover attorney's fees unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

S.Rep.No.94–1011, 94th Cong., 2d Sess. 4, *reprinted in* [1976] U.S.Code Cong. & Ad. News, pp. 5908, 5912. *Dawson v. Pastrick*, 600 F.2d 70, 79.

Appellants contend that the award in this instance is unjust in that (1) appellees were not the prevailing party, (2) there are special circumstances which would make the award unjust, and (3) the amount of fees was improperly calculated.

The court properly determined that appellees were the prevailing party in this action. While it is true that the initial suit included eight defendants and that the final judgment was entered against only three, it is only the suit against those three which is the basis for the fees. This is not a suit like *Roesel v. Joliet Wrought Washer Co.*, 596 F.2d 183 (7th Cir. 1979), in which plaintiff and defendant each prevailed in part. Nor did the Coops recover on only part of their claims against the three defendants, although it is clear that this would not require a different result. *See Muscare v. Quinn*, 614 F.2d 577 (7th Cir. 1980); *Dawson v. Pastrick*, 600 F.2d 70. The small amount of the award for damages is an appropriate consideration in the determination of reasonable fees (*see Waters v. Wisconsin Steel Works*, 502 F.2d 1309, 1332 (7th Cir. 1974), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976)), but does not change appellees' status as a prevailing party. *Perez v. University of Puerto Rico*, 600 F.2d 1 at 2 (1st Cir. 1979).

Likewise, no special circumstances exist which would render an award of fees unjust. There is no merit in appellants' contention that the amount of the verdict should be considered such a circumstance since it is clear that in appropriate circumstances, even nominal damages will support an award of fees. *Id.*

Appellants characterize the case as a "technical common law trespass" in their argument on appeal, suggesting that the consequences are individual and insignificant. To an extent there is some merit to this argument. No actual damage, at least of any significance, resulted. The Coops stated they would not have voluntarily cooperated with the police had they been first informed, but no doubt many good citizens would have assisted the police in their endeavor to execute a legal warrant by minimizing the threat of death or serious injury to all concerned, including the several young children in the Watson home. However, appellants recognized the constitutional dimension in their own removal petition from state to federal district court. Further, it would not be inconsistent with the record for the court to have concluded that the judgment would have an effect beyond the confines of the case, especially in light of testimony by South Bend police officers as to the limited extent of their knowledge of Fourth Amendment rights. We often have enough trouble ourselves with consti-

tutional issues not to expect police officers to be constitutional lawyers, but their actions in this case cannot be so easily excused.

The suggestion that refusal of a settlement for an amount nearly equal to that awarded by the jury should be considered a special circumstance is also meritless. This is not an instance where litigation has been unduly prolonged with no hope of a greater recovery. The decision of the court on punitive damages was made after the close of all the evidence; the possibility of such a recovery existed at all times during the trial.

 This brings us to appellants' contention that the amount of the award was improperly calculated. They first argue that they were precluded from filing a brief by the issuance of the order awarding fees on December 3, 1979. The order of October 25, 1979, having clearly stated that no extensions of time would be granted and appellants' having declared that they were *not* prepared "at the close of the business day" to file their brief, that charge carries little weight. Nevertheless, their brief was filed on December 4, 1979, and considered by the court in its own review of the award. Appellants' belief that a hearing was necessary is without foundation since briefing alone has been found adequate. *See Konczak v. Tyrrell*, 603 F.2d 13 (7th Cir. 1979).

Objections that the award was not in keeping with the guidelines of *Waters v. Wisconsin Steel Works*, 502 F.2d 1309 (7th Cir. 1974), and not sufficiently specific are not consonant with the record. The affidavit requesting attorney's fees indicates only Bob and Rhonda Coop as plaintiffs in the cause for which fees were requested. Fees for actions by the Watsons were not included as appellants suggest. The hours were itemized into fourteen parts, with indications of specific activities and time spent on each. The district court judge carefully eliminated the hours which reflected work done for claims against the Indiana & Michigan Electric Company. He then reduced the number of hours allowed to counsel at trial and the hourly fee from $75 to $50.

 Appellants argue that since specific information on each of the criteria, especially the question of contingent fees does not appear on the record, the award could not be properly determined. The factors set out in *Waters* and adopted by this court in § 1988 cases in *Muscare v. Quinn*, 614 F.2d 577 (7th Cir. 1980), are guidelines. It is not required that each of the enumerated factors be considered and passed on specifically. The award is to be based on the totality of the case in light of the purpose of the act: "to permit and encourage plaintiffs to enforce their civil rights." *Perez v. University of Puerto Rico*, 600 F.2d at 2. In certain circumstances consideration of factors other than those identified in *Waters* may be apposite. In reluctantly approving this fee as being within the discretion of the trial judge, we do not mean to infer that as trial judges we would have set so high a fee in the particular circumstances of this case. Our purpose is to permit and encourage the redress of the civil rights violations of victims but not to create a civil rights fee bank to be liberally drawn upon by lawyers for their own welfare.

 The district court clearly indicated that the *Waters* criteria were considered and that the fee award was modified accordingly. While the amount is large in proportion to the damage award, the district court judge is free in his sound discretion to determine the appropriate amount. Ascertaining the value of what was accomplished may involve subordinating the amount of recovery to other more important factors.

For the foregoing reasons, the order of the district court is affirmed.