663 F.2d 760
 Fed. Sec. L. Rep. P 98,400
Elmer E. MILLS and Louis Susman, Plaintiffs-Appellees,
v.
ELTRA CORPORATION, a New York Corporation, the Electric
Auto-Lite Company, and American Manufacturing
Company, Inc., Defendants-Appellees.
Appeal of Mozart G. RATNER, Attorney.
Elmer E. MILLS and Louis Susman, Plaintiffs-Appellees,
v.
ELTRA CORPORATION, a New York Corporation, Defendant-Appellant.
 Nos. 80-2269, 80-2270.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 21, 1981.
Decided Nov. 10, 1981.
 
 1
 Jerold S. Solovy, Jenner & Block, Chicago, Ill., for plaintiffs-appellees.
 
 
 2
 Mozart G. Ratner, Washington, D. C., for defendants-appellees/cross-appellant.
 
 
 3
 Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and DUMBAULD, Senior District Judge.*
 
 
 4
 DUMBAULD, Senior District Judge.
 
 
 5
 The only issue in the case at bar is the amount of the fee which a Washington lawyer seeks for work done in 1969. What Judge Aldisert foresaw in Lindy Bros. v. Am. Radiator & Standard Sanitary Corp., 540 F.2d 102, 116 (3rd Cir. 1976), has here come to pass: the fee proceedings have become the main event rather than the side show, assuming "massive proportions, perhaps even dwarfing the case in chief." Indeed, of the total hours recorded (up through June 1980) by the fee applicant, Mozart C. Ratner, as having been spent upon the instant proceedings, over 350 hours were devoted to prosecution of his fee application, and only 186 to the case in chief for the work done earning the fee.
 
 
 6
 Under certain circumstances justice requires that time and effort spent in complying with court-created requirements which counsel must meet in order to collect a fee to which he is legally entitled should be included in his compensation. Pitchford v. Pepi, 440 F.Supp. 1175, 1179-80 (W.D.Pa.1977), aff'd 582 F.2d 1275 (3rd Cir. 1978), cert. den. 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 242 (1979). But this rule does not apply where the right to compensation depends upon the creation of a common fund or benefit rather than statutory entitlement. Lindy, supra, 540 F.2d at 111. The distinction between the two types of situations is explained in Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 257-59, 95 S.Ct. 1612, 1621-22, 44 L.Ed.2d 141 (1975). The case at bar is a class action of the Lindy type rather than one involving statutory authority.
 
 
 7
 Ratner's services were rendered in connection with Mills v. Electric Auto-Lite, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). That case involved a stockholders' disclosure suit to set aside a merger of Auto-Lite with Mergenthaler Linotype Co., on the ground that the proxy solicitation was misleading in failing to disclose that Auto-Lite's officers were controlled by Mergenthaler.
 
 
 8
 The Supreme Court, vacating the judgment of this Court, held that partial summary judgment for plaintiffs should be granted on the issue of liability, and that plaintiffs should be awarded interim litigation expenses and reasonable attorneys' fees. 396 U.S. at 389, 90 S.Ct. at 624.
 
 
 9
 Ratner did not participate in the subsequent conduct of the case, which resulted in a decision that plaintiffs had proved no damages, and were entitled to no further attorneys' fees after the Supreme Court decision. Mills v. Electric Auto-Lite Co., 552 F.2d 1239, 1249-50 (7th Cir. 1977), cert. den. 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977).
 
 
 10
 Ratner argues, by analogy to admiralty law, that he was salvor of the case, rescuing it from the sea of defeat, but that it later sank due to negligent navigation by others. He claims chief credit for the grant of certiorari, arguing that the Supreme Court adopted a theory developed by him in Bakery & Confectionery Workers v. Ratner, 335 F.2d 691, 695 (D.C.Cir.1964). Ratner also asserts that the case could have been settled for $6 million after the Supreme Court victory.
 
 
 11
 However, that figure was merely suggested by the district judge; no offer was made of that amount. The opposed attorneys merely agreed to negotiate "from that figure down," and the plaintiffs regarded it as too low. Ratner claims, on the basis of this valuation of the case, a half million dollars as his fee here. The other attorneys in the Supreme Court victory received fees based upon hourly rates of $20 to $80 but Ratner (after first being included with the other lawyers at a figure of $74,000) chose to pursue his fee claim independently. A total of $289,550 was paid to the Chicago counsel. Ratner had also been offered a fixed rather than contingent arrangement when originally retained but did not accept that proposal. He now argues that in the case of contingent fees the factor of results should be controlling, rather than amount of time spent.
 
 
 12
 Even if this argument is accepted, the ultimate result for plaintiffs was zero recovery. Ratner is not entitled to assume a $6 million or more value for the result of his work in the Supreme Court victory. Hence his claim is highly exaggerated. As the District Court observed, his claim is "enormous and out of line." Hence appellees would deny him any fee, under the reasoning of Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir. 1980).
 
 
 13
 However, we believe that Ratner's work was of substantial value in the successful effort to obtain grant of certiorari, and that he is entitled to a fee of $27,900, reduced from the $33,480 awarded by the District Court.
 
 
 14
 Ratner's participation in the case when certiorari was sought included a telephone call to Justice Thurgood Marshall's office to procure an extension of time for filing the petition for certiorari, revising a draft petition prepared by Chicago counsel, seeking support of the SEC and the Solicitor General for the petition, and contributing to the brief on the merits submitted to the Supreme Court. The District Court recognized Ratner's substantial contribution to success in the Supreme Court; but of course, "there were great men before Agamemnon," and eminent Chicago counsel (including one later Circuit Judge and one District Judge), as well as Solicitor General Erwin Griswold (retired dean of the Harvard Law School) are entitled to some share of credit for success in the Supreme Court litigation.
 
 
 15
 Although when Ratner ceased to be a member of the crew the ship was afloat, it is not possible to accept his contention that it later ran aground due to poor navigation for which he was not to blame. Choosing to base his claim upon the theory of results obtained in a contingent fee case, he must accept the fact that under that theory it is the ultimate result of benefit to the client that is the standard for measuring the value of the case. Zero is not $6 million. Ratner's claim is clearly excessive. But, as previously indicated, his fee should not be denied him in toto under the reasoning of Brown v. Stackler.[1]
 
 
 16
 We recognize that, under decisions in this Circuit, "determination of what constitutes a reasonable attorney's fee is a matter that must be judged on the facts and circumstances of each case." Illinois v. Sangamo Construction Co. et al., 657 F.2d 855 p. 862 (decided 1981). A helpful method of analysis of appropriate factors to assist in making such evaluations is set forth in Waters v. Wisconsin Steel Works, 502 F.2d 1309, 1322 (7th Cir. 1974):
 
 
 17
 In fashioning a method of analysis to assist in determining the amount of attorney fees ... we cannot subscribe to the view that attorney fees are to be determined solely on the basis of a formula applying "hours spent times billing rate." We recognize however that such a factor is a consideration in making the ultimate award and indeed it is a convenient starting point from which adjustments can be made for various other elements. Other elements to be considered are set out in the Code of Professional Responsibility as adopted by the American Bar Association:
 
 
 18
 Factors to be considered as guides in determining the reasonableness of a fee include the following:
 
 
 19
 (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
 
 
 20
 (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
 
 
 21
 (3) The fee customarily charged in the locality for similar legal services.
 
 
 22
 (4) The amount involved and the results obtained.
 
 
 23
 (5) The time limitations imposed by the client or by the circumstances.
 
 
 24
 (6) The nature and length of the professional relationship with the client.
 
 
 25
 (7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
 
 
 26
 (8) Whether the fee is fixed or contingent. Disciplinary Rule 2-106.The Code of Professional Responsibility clearly reflects that an award of attorney fees involves the coalescence of many considerations including the reasonableness of the time spent by counsel, the extent of counsel's success, and the complexity of the case.
 
 
 27
 Citing Waters, the Court pointed out in Coop v. City of South Bend, 635 F.2d 652, 654 (7th Cir. 1980) that "(t)he small amount of the award for damages is an appropriate consideration in the determination of reasonable fees."[2]
 
 
 28
 The fee award factors enumerated in Waters[3] were reaffirmed recently in Bonner v. Coughlin, 7 Cir., 657 F.2d 931 (1981).[4] It was there again noted that "the nominal nature of the damages is a factor to be considered in determining the amount of the award." (P. 934).
 
 
 29
 No damages could be more nominal than the "nothing" received by Ratner's clients in the case at bar. His reliance therefore upon the fourth Waters factor ("(t)he amount involved and the results obtained") is misplaced. There never was any $6 million dollar pie to be sliced up.
 
 
 30
 It is therefore appropriate to rely more heavily than Ratner would wish on the Lindy factors, where time spent and hourly rate are primary considerations. Ratner has stated that his hourly rate in non-contingent fee matters was $100, and that 186 hours were spent on the case before the Supreme Court's mandate went down. His contention that a higher rate is proper in contingent fee cases seems meritorious, and he has indicated an hourly rate of $150 in such cases would be appropriate.[5] Taking that figure, an award of $27,900 is indicated. Weighing all the circumstances of the case, this seems to be a fair and just amount, and we shall award that sum, reducing the District Court's award for the reasons previously stated. All parties shall bear their own costs.
 
 
 31
 Reversed and remanded for entry of judgment in accordance with this opinion.
 
 
 
 *
 The Honorable Edward Dumbauld, Senior District Judge of the Western District of Pennsylvania, is sitting by designation
 
 
 [1]
 In Brown v. Stackler the applicant simply procured postponements of the case he was handling while awaiting decision by the Supreme Court of a case from Virginia which would provide a controlling precedent. 612 F.2d at 1058. Ratner, as previously indicated, performed substantial work of value
 
 
 [2]
 Coop was a civil rights case, where Congressional policy prescribes award of fees as an incentive to private enforcement of the law, for the benefit of the public generally, beyond the interests of the immediate plaintiff. Under such circumstances the fee may exceed the amount of recovery. Even so, the purpose "is to permit and encourage the redress of the civil rights violations of victims but not to create a civil rights fee bank to be liberally drawn upon by lawyers for their own welfare." 635 F.2d at 655. The case at bar, it should be emphasized, was not such an instance of a fee based upon statutory policy and entitlement, but one of equitable recognition of the services of the creator of a common fund or benefit
 
 
 [3]
 As pointed out in Bonner (p. 934, n. 4) the court "need not address each factor specifically, nor is the list necessarily inclusive for all cases."
 
 
 [4]
 Bonner, like Coop (see note 2, supra) was a civil rights case involving a recovery of $100. The District Court inexplicably increased its original fee award of $6,000 to $24,985, which this Court found excessive and remanded for recalculation under the appropriate guidelines
 
 
 [5]
 Ratner's testimony is found in Supplemental Appendix, Transcript of Proceedings, August 28, 1979, pp. 28-29. Of course, at the same time he asserted a claim to a fee of $630,000 based upon a successful result valued at $6,284,000. Ibid., p. 30. We are aware (as pointed out in Ratner's letter to the Court of September 23, 1981, and Judge Danaher's opinion in the Bakery and Confectionery Workers case) that in determining what is a reasonable fee the Court is not bound to accept as controlling the applicant's own initial evaluation of his services though "compensation at the rates provided in the retainer agreement ... may be considered as some evidence of the value which the appellee initially placed upon his own services". 335 F.2d at 695. Upon independent determination we are satisfied that under all the circumstances of the case the $150 rate is fair and reasonable compensation for the work done