GREGORY BAKSINSKI *et al.*, Plaintiffs-Appellants, v. NORTHWESTERN UNIVERSITY *et al.*, Defendants (The City of Chicago, Intervenor-Plaintiff-Appellee).

First District (4th Division)   No. 1—90—3180

Opinion filed May 21, 1992.—Rehearing denied July 16, 1992.

8

Clinton A. Krislov and Jonathan Nachsin, both of Krislov & Associates, Ltd., of Chicago, for appellants.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Stan Berman, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE McMORROW delivered the opinion of the court:

This is an appeal from an order denying an amended petition for attorney fees. The issue on appeal is whether the petitioner, Clinton Krislov, is entitled to compensation for preparing and litigating that fee petition.

In 1983, plaintiffs, Gregory and Edward Baksinski, through their attorney, Sidney Z. Karasik, filed an action as Chicago taxpayers against the City of Chicago (City) and various not-for-profit entities alleging that those entities were improperly being exempted from payment of water and sewer charges. The action sought an accounting and a mandatory injunction requiring the City to collect the water and sewer fees.

In 1985, the City obtained leave to realign itself as a plaintiff. The Baksinskis and Karasik were given leave to remain in the case as monitors of the City's progress in prosecuting the claims. The City and various defendants ultimately reached settlement agreements for back payment of water and sewer charges, which netted the City in excess of $10 million, as well as agreements for the future payment of water and sewer usage fees.

On March 16, 1990, Karasik filed a petition for attorney fees. The petition included a lodestar amount based upon 188.5 hours at a rate of $175 per hour enhanced by the application of a multiplier of two. Through a miscalculation of these figures, Karasik arrived at a total of $56,500.

The City opposed the award of any fees, arguing that there was neither statutory authorization for attorney fees nor a common fund from which fees could be awarded. Alternatively, the City argued that the requested award was excessive, and that if any award were made, it should be no more than $7,070.

Thereafter, Karasik was diagnosed as terminally ill and engaged attorney Clinton Krislov to pursue the fee petition. Krislov was granted leave to appear on May 22, 1990. In lieu of a reply to the City's response to Karasik's fee petition, Krislov filed an amended fee petition in August 1990. The amended petition sought a fee award of

10% of the amounts recovered by the City. In the alternative, Krislov sought fees based upon an "updated" lodestar computation of a $275 hourly rate multiplied by 288 hours, which included the 188.5 hours claimed by Karasik up to July 1986, plus "subsequent time, including preparation of [the] amended petition, believed to total approximately 100 hours through the filing of [the petition]." Krislov then requested that this "working figure lodestar" of $86,400 be enhanced by a multiplier of six, resulting in a total of $518,000. Krislov also requested a $25,000 incentive award to be shared by the Baksinskis for instituting the action.

In its response to Krislov's amended fee petition, the City reiterated the objections it raised in its memorandum in opposition to Karasik's original petition for a fee award of $56,550. The City also strongly opposed Krislov's amended petition arguing, *inter alia*, that there was no legal basis for either a percentage award, an award of fees for preparation of the amended petition or an incentive award for the Baksinskis; that the theories advanced by Krislov in support of his position were untenable; and that the amounts requested by Krislov were unwarranted and grossly excessive. The City requested that the court reject Krislov's amended petition in its entirety.

A hearing was held on September 18, 1990. The City moved that Krislov's amended petition be stricken. Following argument by counsel, the court rejected the positions advanced by Krislov and "disallowed" the amended petition. The court also rejected the City's assertion that it lacked authority to award attorney fees because there was no "common fund" brought into court from which fees could be drawn. The court observed that as a court of equity, it was empowered with the discretion to award reasonable attorney fees as compensation for Karasik's successful efforts on behalf of the City and the taxpayers. In recognition of Karasik's skill and the substantial benefit his efforts produced, the court allowed all of the hours claimed by Karasik, applied a multiplier of three to the lodestar amount in Karasik's petition, rather than a multiplier of two which Karasik had requested, and ordered a $75,000 fee award. The court also granted a $25,000 incentive award to the Baksinskis for becoming involved in public interest litigation and to encourage others to do so in the future.

On September 25, 1990, Krislov filed a motion for reconsideration and correction of the September 18 order on three matters. He first pointed out the mathematical error in Karasik's original calculation of the lodestar amount. In addition, Krislov argued that the lodestar should have been calculated on the basis of a current market rate of

$275 an hour rather than at the lower rate charged by Karasik during the years of the litigation. Finally, Krislov reargued that the court improperly excluded fees for time spent on the preparation of the fee petitions.

The City moved for reconsideration of the incentive award to the Baksinskis, and also filed a response to Krislov's motion for reconsideration. The City acknowledged the mathematical error in Karasik's petition, but maintained that since no legal authorization for an award of fees existed in the first instance, the award granted by the court should not be increased.

The court entered an order in which it (1) corrected the mathematical error in Karasik's original computation of the lodestar and thereby increased the fee award from $75,000 to $98,962.50, based upon a lodestar of $32,987.50 multiplied by three, and (2) vacated the Baksinskis' incentive award. Cross-appeals were filed but, following a settlement between Karasik and the City on Karasik's claim for attorney fees, the City voluntarily dismissed its appeal and the plaintiffs dismissed their appeal as to all issues except the denial of Krislov's petition for fees for his work on the amended fee petition.

It is Krislov's contention that the trial court improperly denied his petition for attorney fees for the time he spent preparing and litigating the fee petitions. He argues that he has spent 300 hours on this litigation and requests that his lodestar for this time, which he computes to be $60,000, be enhanced by the same multiplier of three as was applied to Karasik's lodestar. He advances several lengthy arguments in support of his position. Specifically, he claims that the court's denial of his request for fees was arbitrary, unjustified and unexplained; that cases have held that fee petition and litigation time is compensable; that it is unfair to require an attorney to expend time and effort on a fee petition but not compensate him for it; that failing to compensate an attorney for such work encourages the opponent to engage in extensive "second litigation" to "wear down" attorneys into accepting less than reasonable fees, and, conversely, that awarding fees will discourage the opponent from engaging in a "hardball defense" which protracts the litigation; that his work produced a substantial benefit, in that it greatly increased Karasik's fee and aided the court in setting it; and that a fee award is necessary to encourage attorneys to take public interest cases. When reduced to summary form, Krislov's arguments are founded on the position that denying him fees for his work is inequitable.

The City responds that the court did not abuse its discretion in denying Krislov a separate fee for his work on the fee petition. The

City argues that attorney fees accrued in fee litigation involving a common fund are not compensable[1]; that because his amended fee petition was stricken, his work did not even produce a benefit for Karasik; and that, in any case, the amount Krislov requests is grossly excessive.

■ With respect to awards of attorney fees, the prevailing rule in the United States, often referred to as the "American rule" (*Alyeska Pipeline Service Co. v. Wilderness Society* (1975), 421 U.S. 240, 44 L. Ed. 2d 141, 95 S. Ct. 1612; *In re Burlington Northern, Inc.* (7th Cir. 1987), 832 F.2d 430), is that in the absence of statutory authority or a contractual agreement between the parties, a successful litigant may not recover attorney fees or the costs of the litigation from his adversary. Illinois has long adhered to this rule. (*Saltiel v. Olsen* (1981), 85 Ill. 2d 484, 426 N.E.2d 1204; *Hamer v. Kirk* (1976), 64 Ill. 2d 434, 356 N.E.2d 524; *House of Vision, Inc. v. Hiyane* (1969), 42 Ill. 2d 45, 245 N.E.2d 468; *Ritter v. Ritter* (1943), 381 Ill. 549, 46 N.E.2d 41; *Constant v. Matteson* (1859), 22 Ill. 546, 560.) No claim has been made in this appeal that there was an agreement between the parties or that the statute permitting taxpayer suits on behalf of municipalities (Ill. Rev. Stat. 1989, ch. 24, par. 1—5—1) authorizes an award of attorney fees.

■ The general rule requiring litigants to bear their own costs and attorney fees does not, however, interfere with the historic power of courts of equity to permit an individual, or the attorney of an individual, who creates, preserves or recovers a fund for the benefit of others in addition to himself by instituting, pursuing or settling litigation, to recover costs and reasonable fees from the fund itself or from its other beneficiaries. (*Boeing Co. v. Van Gemert* (1980), 444 U.S. 472, 62 L. Ed. 2d 676, 100 S. Ct. 745; *Alyeska Pipeline Service Co. v. Wilderness Society* (1975), 421 U.S. 240, 44 L. Ed. 2d 141, 95 S. Ct. 1612; *Trustees of the Internal Improvement Fund v. Greenough* (1881), 105 U.S. 527, 26 L. Ed. 1157.) This principle, by which courts exercise their inherent powers of equity, has become known as the common fund or equitable fund doctrine (hereafter equitable fund doctrine). See, *e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 62 L. Ed. 2d 676, 100 S. Ct. 745; *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.* (3d Cir. 1973), 487 F.2d 161

---

[1]The City indicates that it has not abandoned its belief that there was no legal basis for any attorney fees in this case. The City states, however, that in light of the settlement agreement it reached with Karasik, it will not contest the existence of a common fund for purposes of appeal.

(*Lindy I*); *Skelton v. General Motors Corp.* (N.D. Ill. 1987), 661 F. Supp. 1368; *Beaton & Associates, Ltd. v. Joslyn Manufacturing & Supply Co.* (1987), 159 Ill. App. 3d 834, 512 N.E.2d 1286.

The award of fees under this doctrine rests on equitable considerations of *quantum meruit* and the prevention of unjust enrichment. When an individual who, by instituting and pursuing successful litigation, has conferred a benefit on a group or class of persons by his creation or preservation of a fund, he is entitled to an award from the fund for the reasonable value of his services. Such an award operates to spread the cost of the litigation proportionately among those who share in the benefit of his efforts. (*Alyeska Pipeline Service Co. v. Wilderness Society* (1975), 421 U.S. 240, 44 L. Ed. 2d 141, 95 S. Ct. 1612; *Hall v. Cole* (1972), 412 U.S. 1, 36 L. Ed. 2d 702, 93 S. Ct. 1943.) To allow the other beneficiaries to obtain the full benefit from the successful efforts of the plaintiff and his attorney without contributing to the litigation expenses would unjustly enrich those beneficiaries at the expense of the successful litigant and his counsel. (*Boeing Co. v. Van Gemert* (1980), 444 U.S. 472, 62 L. Ed. 2d 676, 100 S. Ct. 745; *Mills v. Electric Auto-Lite Co.* (1970), 396 U.S. 375, 24 L. Ed. 2d 593, 90 S. Ct. 616; *Skelton v. General Motors Corp.* (N.D. Ill. 1987), 661 F. Supp. 136; *Purdy v. Security Savings & Loan Association* (E.D. Wis. 1989), 727 F. Supp. 1266.) Fee awards under the equitable doctrine must, however, be "made with moderation and a jealous regard to the rights of those *** interested in the fund." *Trustees of the Internal Improvement Fund v. Greenough* (1881) 105 U.S. 527, 536-37, 26 L. Ed. 1157, 1161-62; *Skelton v. General Motors Corp.* (N.D. Ill. 1987), 661 F. Supp. 1368.

As the court observed in *Saltiel v. Olsen* (1981), 85 Ill. 2d 484, 426 N.E.2d 1204, allowance of fees under the equitable fund doctrine is not inconsistent with the American rule, nor is it truly an exception to it, though it has been characterized as such. In equitable fund cases, the award of fees and expenses is not charged against the adversary, as is disallowed by the American rule, but, rather, against the persons or entity which are benefited by the successful creation or preservation of the fund.

The Illinois Supreme Court has adopted the approach taken by the majority of Federal courts on the issue of attorney fees in equitable fund cases. (*Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019; *Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897.) Where an equitable fund has been created, attorneys for the successful plaintiff may directly petition the court for the reasonable value of

those of their services which benefited the class. *Fiorito v. Jones*, 72 Ill. 2d 73, 377 N.E.2d 897.

The beneficial result achieved is of major importance because attorney fees reduce each class member's proportional share of the recovery. (*Lurie v. Canadian Javelin Limited* (1982), 93 Ill. 2d 231, 443 N.E.2d 592.) In determining reasonable compensation, the court must also consider, among other factors, the number of hours expended on services which benefited the class, the manner in which the time was expended, and by whom. The amount of the award of attorney fees is within the sound discretion of the trial court. (*Fiorito v. Jones*, 72 Ill. 2d 73, 377 N.E.2d 897.) Citing *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.* (3d Cir. 1973), 487 F.2d 161 (*Lindy I*), and *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.* (3d Cir. 1976), 540 F.2d 102 (*Lindy II*), the *Fiorito* court expressly held, however, that "[h]ours which do not benefit the class members are to be disallowed." *Fiorito*, 72 Ill. 2d at 89.

*Fiorito* did not involve a claim for attorney fees for time spent pursuing fees after the successful conclusion of equitable fund litigation. However, in *Lindy II*, cited by the *Fiorito* court, the specific question of whether such fees are allowable was addressed by the Third Circuit Court of Appeals, *en banc*. In determining that fee litigation time was not compensable, the court reasoned:

> "Services performed in connection with the fee application are necessary to the attorney's recovery. They benefit *him*, for without them, the attorney cannot \*\*\* recover. But such services do not benefit *the fund*—they do not create, increase, protect or preserve it. Accordingly, \*\*\* we accept the prevailing rule for litigation involving the competing interests of claimants to a common fund[, *i.e.*, for there to be a charge against the fund there must be a benefit to the fund (540 F.2d at 110)]. There being no benefit to the fund from services performed by [attorneys] in connection with their fee application, there should be no attorneys' fee award from the fund for those services." (Emphasis in original.) (*Lindy*, 540 F.2d at 111.)

The court in *Lindy II* thus found that the district court had abused its discretion in awarding fees for pursuing the fee and vacated that portion of the award granted by the district court.

In addition to our supreme court's reliance on *Lindy II* in holding that hours that do not benefit the class must be disallowed, courts in the Seventh Circuit, as well as other jurisdictions, have also expressly adopted the reasoning in *Lindy II*. These courts have disallowed fees

and expenses for tasks and matters not directly benefiting the class in cases involving a common or equitable fund.

*Mills v. Eltra Corp.* (7th Cir. 1981), 663 F.2d 760, was an appeal in an action to recover fees for services rendered in a stockholders' disclosure suit. The attorney sought fees for 186 hours he spent on the case in chief as well as 350 hours spent on prosecution of the fee application. The *Mills* court first noted, as was cautioned in *Lindy II*, that the fee proceedings had "become the main event rather than the side show." (663 F.2d at 761.) The court observed, as Krislov argues in this appeal, that "[u]nder certain circumstances[,] justice requires that time and effort spent in complying with court-created requirements which counsel must meet in order to collect a fee to which he is legally entitled should be included in his compensation." (663 F.2d at 761.) However, relying on *Lindy II*, the court held, "[b]ut this rule does not apply where the right to compensation depends upon the creation of a common fund or benefit rather than statutory entitlement." (663 F.2d at 761.) The court thus allowed fees only for the 186 hours spent on the underlying litigation.

In *Skelton v. General Motors Corp.* (N.D. Ill. 1987), 661 F. Supp. 1368, the district court conducted a detailed examination of the fee petitions submitted by the numerous attorneys in a consumer class action suit. Fees for many of the hours requested were reduced or disallowed as excessive or duplicative. In each instance, the court expressly stated that the hours were reduced or disallowed because they were of minimal or no benefit to the class. One of the several firms involved in the litigation also requested reimbursement for time spent preparing its fee petition. The *Skelton* court disallowed the time under the general rule enunciated in *Lindy II* and by other courts, that such time is not compensable in common fund cases because it is "clearly not time spent creating, preserving or enlarging the fund." 661 F. Supp. at 1388 n.33.

Another Seventh Circuit case, *Purdy v. Security Savings & Loan Association* (E.D. Wis. 1989), 727 F. Supp. 1266, involved fee petitions submitted following settlement of an investors' class action suit. After reviewing the general principles upon which the equitable fund doctrine rests, the court discussed the nature of an attorney's position upon successful conclusion of the equitable fund litigation. The court explained that once an attorney files a petition for compensation from the fund, his role changes from that of a fiduciary for his clients to that of a claimant against the fund which was created for the benefit of the clients. Because, the court observed, the defendants are rarely interested in the distribution of their contribution to the fund, it is

"incumbent upon the trial court to become the fiduciary for the fund's beneficiaries," and, quoting *Trustees v. Greenough* (105 U.S. at 536-37, 26 L. Ed. at 1161-62), "to act with 'moderation and a jealous regard to the rights of those who are interested in the fund' in determining what is a reasonable fee to be paid to class counsel for their efforts in settling the litigation and creating the fund." *Purdy*, 727 F. Supp at 1269, also citing *Skelton*, 661 F. Supp. 1368, and *City of Detroit v. Grinnell Corp.* (2d Cir. 1974), 495 F.2d 448.

Following a detailed examination of the fee petitions, the *Purdy* court reduced and disallowed certain fees requested by the attorneys. Among the time excluded were two hours involving publicity rather than legal work and approximately four hours relating to the fee petition. Regarding the latter, the court, citing *Mills v. Eltra Corp.* (663 F.2d 760), stated that the Seventh Circuit has held that "when an attorney's right to compensation depends upon the creation of a common fund, time spent collecting the fee cannot be included in the compensation." *Purdy*, 727 F. Supp. at 1270.

In the *Grinnell* case, also cited by *Purdy*, the Second Circuit likewise expressly adopted the rule enunciated in *Lindy II* and disallowed any compensation for preparation and litigation of the fee petition both in the district court and on appeal as not being services which benefit the class. As further support for its ruling, the court posited that "if counsel is allowed compensation for efforts to obtain his fee, any class member objecting to an initial award would risk increasing the total attorneys' fee—and thereby decreasing the class's fund—even though successful in pressing the objection." *City of Detroit*, 560 F.2d at 1102.

See also *In re Chicken Antitrust Litigation* (N.D. Ga. 1980), 560 F. Supp. 963 (court held it was bound by the equitable fund doctrine and had no authority to award fees from the settlement fund in excess of the reasonable value of the benefits conferred upon the class by the petitioner, which did not include preparation of a petition for fees benefiting only the attorney); *In re Armored Car Antitrust Litigation* (N.D. Ga. 1979), 472 F. Supp 1357 (time spent on fee application did not benefit the class; if anything, it was antagonistic to the claimants' recovery and could not be awarded from an equitable fund); *Computer Statistics, Inc. v. Blair* (S.D. Texas 1976), 418 F. Supp. 1339 (time devoted to compiling and presenting a fee petition is beyond the scope of efforts for which fees are to be allowed because such services are not rendered in connection with the recovery). *Cf. In re Fine Paper Antitrust Litigation* (3d Cir. 1984), 751 F.2d 562 (time spent interviewing a potential witness for the State-related liti-

gation following settlement of the Federal action was disallowed as not benefiting the class).

In his reply brief, Krislov attempts to distinguish *Lindy II* and the cases following it on the ground that they were all class action suits on behalf of unrepresented claimants, whereas the litigation here was a derivative suit on behalf of the City. His lengthy argument on this point is not persuasive. Although there was no class certification in this case, Krislov himself argued in the trial court that this was a common or equitable fund case which reaped monies "for the benefit of the taxpayer class" and that was the rationale upon which the court awarded a fee to Karasik. While it is the City which receives the funds paid by the defendants as a result of the litigation, the primary and ultimate beneficiaries are the taxpayers. It is they who fund all City expenditures, including the water and sewer expenses to which the defendants were previously exempted from contributing. Further, it has been held that an attorney's work on a fee application is not to be counted in setting attorney fees when the fee will reduce the fund obtained, whether in a class action or a derivative suit. *Seigal v. Merrick* (2d Cir. 1980), 619 F.2d 160.

Krislov's briefs cite to no less than 45 cases, a full review of which is neither feasible nor necessary, because the authorities he cites are generally inapposite to the case before us. For example, each of the Illinois cases cited involved a statute authorizing an award of fees. In *Rackow v. Illinois Human Rights Comm'n* (1987), 152 Ill. App. 3d 1046, 504 N.E.2d 1344, the court awarded fees, including two hours for preparation of the fee petition, under the Illinois Human Rights Act. In *Wayne Township Board of Auditors v. Ludwig* (1987), 154 Ill. App. 3d 899, 507 N.E.2d 199, fees were allowed for time spent to enforce the township's statutory obligation to pay for the costs of the litigation. Citing *House of Vision, Inc. v. Hiyane* (1969), 42 Ill. 2d 45, 245 N.E.2d 468, the court noted, however, that even where litigation expenses are authorized by statute they are generally confined to expenses necessarily incurred in the prosecution or defense of the primary action. The court in *In re Estate of Marks* (1979), 74 Ill. App. 3d 599, 393 N.E.2d 538, rejected an argument that *Leader v. Cullerton* (1976), 62 Ill. 2d 483, precluded the probate court's award of fees for services rendered to the executor of an estate, stating that *Leader* was a class action suit and, therefore, distinguishable.

Similarly, the majority of the Federal cases cited by Krislov also involved fee-shifting statutes. Indeed, several of the cases are directly adverse to Krislov's position in that they expressly recognize the pre-

vailing rule disallowing compensation for fee litigation in cases involving an equitable fund.

For instance, in *Prandini v. National Tea Co.* (3d Cir. 1978), 585 F.2d 47, a civil rights class action suit, the court discussed the policy reasons for its earlier decision in *Lindy II* disallowing fees for work relating to the fee petition in equitable fund cases. The court emphasized that the case before it was not an equitable fund case but one in which fees were statutorily authorized. The court explained that fees allowed by statute "do not come out of, nor do they reduce, the plaintiff's recovery. Hence [they are] unlike a common fund award, which does reduce the plaintiffs' recovery." (585 F.2d at 53.) The court held that in cases where fees are statutorily authorized, "the considerations of *Lindy II* and the equitable fund cases do not apply" because "[s]tatutorily authorized fees are not paid out of the plaintiffs' recovery, and the attorney in seeking his fee is not acting in any sense adversely to the plaintiffs' interest." 585 F.2d at 53.

*In re Nucorp Energy, Inc.* (9th Cir. 1985), 764 F.2d 655, in which the court allowed fees for 200 hours of time spent preparing a 400-page fee application in a bankruptcy case involving 40 attorneys and paralegals and 6,500 hours of litigation time, is also of no assistance to Krislov. *Nucorp* presents an even more detailed analysis of the distinction between equitable fund and statutory fee cases. The court observed that there is a "divergence of interests" between attorneys and clients in common fund cases. Fees for services which create or preserve the fund are awarded to avoid unjust enrichment of class members who benefit from the attorney's efforts. Fees for services relative to the fee application, on the other hand, are disallowed because they reduce the fund and are therefore in conflict with the interests of the class members for whose benefit the fund was established. The *Nucorp* court stated that the principal concerns prompting courts to refuse compensation to attorneys for fee litigation time in common fund cases do not exist in statutory fee or bankruptcy cases. Because these cases do not involve principles of unjust enrichment, nor are the fees paid from a client's recovery, but, rather, in addition thereto either by the defendant or the bankruptcy estate, it is not improper to award fees for services in connection with fee petitions.

The majority of the remaining Federal cases cited by Krislov are similarly distinguishable. Several involved a fee-shifting statute; others presented situations to which the rationale in fee-shifting cases was applied because the fees were not to be deducted from a fund created for the benefit of the plaintiff class; and two involved uncontested class action settlement agreements which incorporated compen-

sation for time spent on the fee petitions. The three common fund cases cited by Krislov which rejected the reasoning in *Lindy II* and allowed fees for fee application work were all written by the same district judge in the Southern District of Ohio. Our research has found no other decisions following those cases on the issue of compensation for fee litigation. In fact, in *Heist v. Jacob* (S.D. Ohio 1985), Nos. C—3—82—184, C—3—82—254, slip op. at 7 n.6, another jurist in the same district recognized the prevailing rule enunciated in *Lindy II* disallowing fees for fee applications in equitable fund litigation.

Krislov characterizes the reasoning in *Lindy II* as "dubious." However, our supreme court in *Fiorito* relied on *Lindy II* in unequivocally ruling that hours which do not benefit the class are to be disallowed. As the authorities cited and discussed above demonstrate, the reasoning in *Lindy II* on the issue of compensation for fee litigation where the fee would be drawn from an equitable fund has been adopted by the vast majority of jurisdictions, and disallowance of such fees has become the accepted rule in this country.

Indeed, the original fee petition submitted by Karasik recognized *Fiorito* and *Leader* as the controlling authority in cases involving common or equitable funds. In discussing the factors to be considered in fashioning a fee award under the lodestar approach, Karasik noted that the *Fiorito* court accepted the "technique for determining attorneys' fees [set forth] in *Lindy I*, and further refined in *Lindy II*, [which] has become widely accepted in the federal system," and that the rules articulated in *Fiorito* and *Leader* "are now applied with great consistency in the determination of reasonable attorneys' fees for counsel in class actions in Illinois." Karasik also cited to *Mills v. Eltra Corp.* (7th Cir. 1981), 663 F.2d 760, in which compensation for fee litigation was denied. Notably, Karasik himself did not request compensation for time spent preparing his own fee petition.

Krislov nevertheless filed an amended petition requesting that the trial court reject the lodestar approach adopted by the supreme court and award a fee based upon a percentage of the fund. In the alternative, he requested that the lodestar for Karasik's services be increased to $275 per hour for 188.5 hours and then upwardly adjusted by a multiplier of six. He also requested an award of fees, based upon the same computation method, for the 100 hours he claimed to have spent on preparation of the amended fee petition itself. On appeal, Krislov seeks compensation for an additional 200 hours of fee-related work performed through the filing of his appellate brief, as well as the 100 hours he claimed in the trial court. Computed

at $275 an hour, he proposes a lodestar of $60,000, enhanced by a multiplier of three, for a total of $180,000 in requested fees.

We first observe the similarity of the instant appeal to the situation in *Mills v. Eltra* (7th Cir. 1981) 663 F.2d 760. In *Mills*, the fee award sought was comprised of 350 hours for work on the fee proceedings and only 186 hours for services performed earning a fee in the case in chief. Here, the 300 hours Krislov claims is more than 1½ times the hours claimed by Karasik for his work on the primary litigation, and his mathematical total approximately doubles the amount the court awarded Karasik for those services. As in *Mills*, the fee proceedings are "assuming massive proportions, perhaps even dwarfing the case in chief." *Mills*, 663 F.2d at 761.

We further note that the purposes of an upward adjustment of the lodestar amount by application of a multiplier are to account for the contingent nature of the particular class action at issue and to reward a successful attorney who, by his superior quality services, has conferred a substantial benefit upon the class. (*Fiorito v. Jones*, 72 Ill. 2d 73; see also *Purdy v. Security Savings & Loan Association* (E.D. Wis. 1989), 727 F. Supp 1266.) In the absence of these factors, employment of a multiplier is not warranted because "each dollar awarded in attorney fees *** further reduce[s] the recovery of the class members." (*Fiorito v. Jones*, 72 Ill. 2d at 92.) The fee litigation in this case is not part of the class action litigation and, certainly, confers no benefit on the class. Even assuming fees for fee litigation were allowable, it is not the type of litigation warranting the application of a multiplier.

■ There is, however, no legal basis upon which to award fees for litigation of the fee petitions in the first instance. None of the time spent preparing and pursuing the petitions for fees has benefited the City or the taxpayers by increasing or preserving the equitable fund consisting of the water and sewer usage payments. To the contrary, the amount awarded pursuant to Karasik's petition reduced the fund. The reduction was justified, of course, by equitable principles of *quantum meruit* and the prevention of unjust enrichment, since Karasik's legal services in instituting and prosecuting the primary litigation were instrumental in the ultimate collection of those user payments.

Fee litigation time, however, benefits only the attorney, and in this case, not even the attorney whose services were instrumental in obtaining the benefit for the class. The dispute over Karasik's fee was resolved long ago. The trial judge rejected the theories advanced by Krislov, disallowed the amended petition and awarded a fee to

Karasik based upon the corrected mathematical computations in Karasik's original petition, albeit with the application of a slightly increased multiplier. The City's appeal of that award was voluntarily dismissed following the settlement between the City and Karasik over the issue of his fee. The fees sought in this appeal are attributable solely to Krislov's work and are solely for his benefit. One third of the $180,000 sought is for the time he spent on the disallowed amended fee petition and two-thirds of it is for his efforts in contesting the denial of that petition. This work has no relation to the underlying litigation and is highly antagonistic to the interests of the City and taxpayers.

The trial court correctly stated that it was bound by the law enunciated in *Fiorito* and exercised sound discretion in denying Krislov's petition for fees for preparing and litigating the amended fee petition. Krislov's appellate request for additional fees for contesting that denial must likewise be denied.

For the reasons stated, the order of the trial court is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.