J-E01002-16

2016 PA Super 177

| | |
|---|---|
| DANIELLE FISHER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| A.O. SMITH HARVESTORE PRODUCTS, INC.; A.O. SMITH CORPORATION; A.O. SMITH (HARVESTORE PRODUCTS); HARVESTORE SYSTEMS T/D/B/A HARVESTORE; COLUMBIAN TEC TANK; CST INDUSTRIES, INC.; AND PENN JERSEY PRODUCTS, INC., | |
| APPEAL OF: CST INDUSTRIES, INC., | |
| Appellant | No. 727 EDA 2013 |

Appeal from the Order Entered February 8, 2013
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2011-03913

| | |
|---|---|
| DANIELLE FISHER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| A.O. SMITH HARVESTORE PRODUCTS, INC.; A.O. SMITH CORPORATION; A.O. SMITH (HARVESTORE PRODUCTS); HARVESTORE COLUMBIAN TEC TANK, CST INDUSTRIES, INC., PENN JERSEY PRODUCTS, INC., AND LEONARD R. KRESGE, INDIVIDUALLY AND D/B/A PROVIDA DAIRY FARM, | |
| APPEAL OF: CST INDUSTRIES, INC., | |
| Appellant | No. 1960 EDA 2013 |

Appeal from the Order June 13, 2013
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2011-03913

| | |
|---|---|
| DANIELLE FISHER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| A.O. SMITH HARVESTORE PRODUCTS, INC.; A.O. SMITH CORPORATION; A.O. SMITH (HARVESTORE PRODUCTS); HARVESTORE SYSTEMS T/D/B/A HARVESTORE, COLUMBIAN TEC TANK, CST INDUSTRIES, INC., AND PENN JERSEY PRODUCTS, INC., | |
| APPEAL OF: A.O. SMITH CORPORATION, | |
| Appellant | No. 2000 EDA 2013 |

Appeal from the Order Entered June 13, 2013
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2011-03913

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN,
 LAZARUS, MUNDY, OTT, STABILE, and DUBOW, JJ.

DISSENTING OPINION BY SHOGAN, J.:              **FILED AUGUST 12, 2016**

Upon review of the plain language of the Asset Purchase Agreement ("APA") between A.O. Smith ("Smith") and CST, Industries, Inc. ("CST"), I cannot agree that a genuine issue of material fact exists with regard to CST's obligation to indemnify Smith.  Thus, I respectfully dissent.

The record confirms that Smith sold the Harvestore automated products line, including roller mills, to Recknell Industries, Ltd. in September 1996 but retained Harvestore's liabilities, including pending or potential litigations involving automated products manufactured before 1996. Recknell Agreement, 9/3/96, at ¶ 3.1.

- 2 -

Smith dissolved Harvestore, transferring its assets and liabilities in July 1997 to a new division of Smith, Engineered Storage Products Company ("ESPC"). Upon acquiring the assets and liabilities of Harvestore, ESPC entered the business of designing, manufacturing, and selling liquid and dry bulk storage tanks. Among the liabilities ESPC acquired were those Smith retained as part of the Recknell Agreement: pending or potential claims for damages related to Harvestore automated products manufactured before 1996, including the roller mill at issue, which was produced in 1981.

In December 2000, pursuant to the APA, Smith sold substantially all of ESPC's operating assets and certain liabilities to CST. APA, 12/15/00, at Preamble. The APA includes among the liabilities assumed by CST a category entitled "Products Liability." APA §§ 1.2.1, 1.5(o), 2.13, 2.22, and Exhibits 2.13, 2.22. Itemized under that broad heading were six cases: Item 2 involved a Harvestore silo; item 3 involved a sugar silo; item 4 involved a storage tank; item 5 involved a roller mill; item 6 involved a leaky tank; and item 7 involved an auger. N.T. (Wagner Deposition), 9/21/12, at 108–112.

Unlike the Majority, I do not consider dispositive of the indemnification issue ESPC's status as a division or the fact that it is not in the roller mill business. Pursuant to the definition of "Assumed Liabilities," CST acquired:

> the following liabilities of the Seller relating to the Division [ESPC] …(A) the current portion of **all liabilities** of the Division as set forth on the face of the Closing Balance Sheet... (B) **all of the Division's obligations and liabilities** arising under the

> "Contracts"... (C) **all liabilities in the nature of product liability, including, without limitation,** any liability for claims made for injury to person, damage to property or other damage arising from, caused by or arising out of any product designed, manufactured, assembled, installed, sold, lease or licensed, or any service rendered by the Division, prior to the Closing Date...

APA, 12/15/00, at ¶ 1.2.1 Definitions (emphasis supplied). In light of the broad sweep of this definition, CST's argument that it is not responsible for Ms. Fisher's roller mill liability because ESPC did not make the roller mill relies on too narrow a perspective. The definition of "Assumed Liabilities" refers to "all liabilities in the nature of product liability" and includes as a specific example "any liability for claims . . . arising out of any product . . . designed, manufactured, assembled, installed, sold, lease or licensed . . . by the Division, prior to the Closing Date." APA, 12/15/00, ¶ 1.2.1. Inclusion in the definition of the specific example of product liability claims related to an ESPC product or service does not negate the general reference to "all liabilities in the nature of product liability," which would include those involving roller mills and augers.

In short, the plain language of the APA indicates that CST was acquiring from ESPC the broad category of product-liability-based liabilities, not liabilities based on specific products, *i.e.*, tanks, silos, augers, or roller mills. As the trial court concluded, the APA's language "indicates the parties' intent to transfer product liability cases, as a group, to CST." Trial Court Opinion, 10/1/13, at 7. Moreover, as the Majority implies, by "carv[ing] Exhibit 2.22—the only reference to litigation involving a roller mill—out of a

list of otherwise excluded activities," Majority at 21, the parties intended litigation involving a roller mill to be an included liability.

Smith's performance pursuant to section 11.1(vi) of the APA supports this interpretation. As the trial court explained, that section obligated Smith "to cover any litigation liability <u>assumed by CST</u> within the first three years of the contract date." Trial Court Opinion, 10/1/13, at 8–9 (underscore in original; citing APA, 12/15/11, § 11.1(vi)). Smith paid damages out of its reserves to settle two of the itemized liabilities before December 15, 2003: **Smith**, which involved a Harverstore roller mill, and **Woods**, which involved a Harvestore auger. "By contrast, <u>Fisher</u> was settled on February 4, 2013, well outside of A.O. Smith's reimbursement obligation period." ***Id.*** (citing APA § 11.7(e) ("… that in no event shall [Smith] have any liability under Section 11.1(vi) for claims for any liability or obligation which arises more than three years from the closing date.")). Smith made these settlement payments because the claims sounded in product liability, not because of the nature of the specific product involved. Notably, although it is in the storage tank business, CST agreed that it assumed liability for the auger case, **Woods**. Smith's Motion for Summary Judgment on Crossclaim, Exhibit 4 (Deposition of John Farris at 12:9–17, 44:15–20).

Similarly sounding in product liability, Ms. Fisher's claim falls under the broad coverage of section 2.22 as a liability assumed by CST. However, because it arose after Smith's payment obligation ended, CST was

responsible for indemnifying Smith for payments made in settlement of Ms. Fisher's product liability claim. The fact that her particular claim involved a roller mill is not relevant to CST's obligation to indemnify Smith for product liability claims in general.

Next, I address Smith's two-fold claim for attorney fees and costs. Smith first seeks recovery of the attorney fees and costs it incurred in defending against Ms. Fisher's action. Smith's Substituted Response Brief at 53. Upon review of the APA, I conclude that Smith is not entitled to attorney fees and costs related to defending against Ms. Fisher's claim.

The dispositive language of the APA reads, "If the Indemnifying Party [CST] fails or refuses to defend any Third Party Claim [Ms. Fisher's claim], the Indemnified Party [Smith] may nevertheless, **at its own expense**, participate in the defense of such Third Party Claim." APA, 12/25/00, at § 11.3 (emphasis supplied). Smith participated in the defense of Ms. Fisher's claim because "CST [did not have] a duty to defend." Smith's Substituted Response Brief at 53. Pursuant to a strict construction of section 11.3, therefore, Smith participated in the defense at its own expense.

Smith also seeks recovery of attorney fees it incurred in prosecuting its indemnification claim against CST. Smith's Substituted Response Brief at 57. Given my position on the indemnification issue, I am of the opinion that, under Illinois law, Smith is entitled to those attorney fees.

The "American Rule" requires specific statutory or contractual authority to receive an award of attorney fees. ***Baksinski v. Northwestern University***, 595 N.E.2d 1106 (Ill. App. 1992). An indemnity agreement is a contractual obligation whereby the indemnitor agrees to protect an indemnitee from claims asserted against the indemnitee by a third person. ***Magnus v. Lutheran General Health Care System***, 601 N.E.2d 907, 915 (Ill. App. 1992). Attorney fees are recoverable pursuant to an indemnity contract if such terms are specifically provided for within the contract. ***Nalivaika v. Murphy***, 458 N.E.2d 995 (Ill. App. 1983).

Section 11.2 of the APA provides for the recovery of damages "incurred or sustained by [Smith] or any of its shareholders, officers or directors as a result of (i) the breach of any term, provision, covenant or agreement contained in this Agreement by [CST]; . . . (iii) [CST's] failure to pay, perform and discharge, when due, any of the Assumed Liabilities." APA, 12/15/00, at § 11.2. The parties agree that the APA definition of "damages" includes attorney fees. CST Substituted Reply Brief at 51–52; Smith's Substituted Response Brief at 13.

Here, CST's refusal to indemnify Smith was a breach under APA section 11.2 that required Smith to file a claim to enforce its right to indemnification. As such, I conclude that CST should be liable to Smith for the attorney fees it incurred in prosecuting that claim.

Based on the foregoing, I would affirm the trial court's order granting summary judgment to Smith on the issue of indemnification. I would affirm in part and reverse in part the denial of Smith's claim for attorney fees and costs.