# Illinois Official Reports

## Appellate Court

---

## *Clark v. Gannett Co.*, 2018 IL App (1st) 172041

---

| | |
|---|---|
| Appellate Court Caption | RAMONA CLARK and DYLAN SCHLOSSBERG, Individually and on Behalf of All Others Similarly Situated, Plaintiffs-Appellees and Cross-Appellants, v. GANNETT CO., INC., a Delaware Corporation, Defendant-Appellee (Gary Stewart, Objector-Appellant and Cross-Appellee; Christopher A. Bandas and C. Jeffrey Thut, Cross-Appellees). |
| District & No. | First District, Second Division<br>Docket No. 1-17-2041 |
| Filed<br>Rehearing denied | November 20, 2018<br>January 18, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CH-06603; the Hon. Kathleen G. Kennedy and the Hon. Pamela McLean Meyerson, Judges, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | C. Jeffrey Thut, of Noonan, Perillo & Thut, of Waukegan, for objector-appellant.<br><br>Rafey S. Balabanian, Ryan D. Andrews, and Alexander G. Tievsky, of Edelson PC, of Chicago, for appellees Ramona Clark and Dylan Schlossberg. |

Bradley J. Andreozzi and Iman N. Boundaoui, of Drinker Biddle & Reath LLP, of Chicago, and Matthew J. Fedor (*pro hac vice*), of Drinker Biddle & Reath LLP, of Florham Park, New Jersey, for appellee Gannett Co.

Darren M. VanPuymbrouck, of Freeborn & Peters LLP, of Chicago, for cross-appellee Christopher A. Bandas.

Joseph R. Marconi, Victor J. Pioli, and Ava L. Caffarini, of Johnson & Bell, Ltd., of Chicago, for cross-appellee C. Jeffrey Thut.

Panel          JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Walker concurred in the judgment and opinion.
Presiding Justice Mason specially concurred, with opinion.

## OPINION

¶ 1 The relationship between class counsel and objector's counsel can be a tense and combative one. And when objector's counsel happens to be professional objectors, who impose objections for personal financial gain without little or no regard for the interests of the class members, open hostility often ensues. Objector's counsel here, Christopher A. Bandas, of Corpus Christi, Texas, and C. Jeffrey Thut, of Chicago, have provoked more than the ire of class counsel, earning condemnation for their antics from courts around the country. Yet, their obstructionism continues.

¶ 2 After the trial court overruled objector counsel's boilerplate objections to the settlement agreement and attorney fees, class counsel decided to expose what they regarded as a farce by moving under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) for sanctions against objector's counsel.

¶ 3 The trial court held a hearing on the Rule 137 motion. The objector, Gary Stewart, of Cardiff, California, who had been ordered to appear at the hearing, was a no-show. The trial court held Stewart in contempt, fined him $500, and struck his objections to the settlement and attorney fees. The trial court also denied sanctions against objector's counsel.

¶ 4 Stewart appeals the trial court's contempt order. But, his notice of appeal is defective. The notice of appeal identifies an order that had been withdrawn and omits mention of the superseding order issued four days later. Thus, this court lacks jurisdiction to review Stewart's contempt finding, and it stands.

¶ 5 Stewart also appeals the trial court's order denying his objections to the class settlement and granting the full amount of class counsel's request for attorney fees. Because the contempt order stands, and that order struck his objections, we need not address his objections.

¶ 6 In the course of the Rule 137 hearing, the trial court granted a motion *in limine* to exclude evidence of objector's counsel's pattern of conduct in representing objectors in class action

lawsuits. We reverse that ruling and remand for new Rule 137 hearing at which this evidence will be admitted to determine whether the objection was filed for an improper purpose.

¶ 7    Finally, we direct the clerk of our court to forward a copy of this order to the Attorney Registration and Disciplinary Commission (ARDC) to determine whether disciplinary action should be taken against Bandas and Thut.

¶ 8                                              The Parties

¶ 9    Plaintiff-Class representatives, Ramona Clark and Dylan Schlossberg, represented by Edelson PC, of Chicago, sued Gannett Co., Inc., in a class action suit alleging violations of the Telephone Consumer Protection Act of 1991 (Telephone Consumer Protection Act) (47 U.S.C. § 227 (b)(1)(A)(iii) (2012)). A disbarred California attorney referred objector Gary Stewart, of Cardiff, California, to attorney Christopher Bandas, a member of the Texas state bar who is not licensed to practice law in Illinois. C. Jeffrey Thut, of Chicago, acted as local counsel for Bandas.

¶ 10                                             Background

¶ 11    Plaintiffs alleged that Gannett violated the Telephone Consumer Protection Act (*id.*) by promoting the sale of its newspapers through unsolicited marketing calls to cellular telephones of a class of about 2.6 million individuals. Plaintiffs sought actual and statutory damages, an injunction on unsolicited calls, and declaratory relief.

¶ 12    In January 2014, Richard Casagrand and Schlossberg filed an almost identical lawsuit in the United States District Court for the District of New Jersey. About two years later, during which little formal discovery appears to have been exchanged, the parties spent a full day in mediation with former federal Judge Wayne R. Andersen. In April, the parties held another full day with Judge Andersen. Next, Casagrand and Schlossberg voluntarily dismissed the New Jersey case, and in May 2016, Schlossberg along with Clark (in place of Casagrand) refiled the virtually identical case in the chancery division of the circuit court of Cook County.

¶ 13    By July, the parties had signed a settlement agreement establishing a nonreversionary fund of $13.8 million. Gannett also promised to initiate various measures designed to ensure compliance with the Act and prevent future unwanted telemarketing calls to consumers. On the matter of class counsel's attorney fees, the settlement agreement provided: "Class Counsel will petition the Court for an award of reasonable attorneys' fees," which class counsel agreed "to limit" at "no more than 39% of the Settlement Fund."

¶ 14    The following month, in August 2016, Judge Kathleen Kennedy preliminarily approved the settlement and directed notice to a settlement class. According to the parties, 99% of the settlement class of 2.6 million members received direct notice of the suit. About 50,000 members made claims to participate in the settlement. Absent from the record is a transcript of the preliminary hearing.

¶ 15    In October, class counsel moved for an award of attorney fees, expenses, and an incentive award for the class representatives.

¶ 16    The sole objector to the settlement was Stewart. His participation was solicited by a disbarred California attorney, Darrell Palmer, who referred Stewart to Texas attorney Bandas. In turn, Bandas contacted Chicago attorney Thut to act as his local counsel. On the last day for filing objections, Thut signed and filed an objection prepared by Bandas, which included this

statement: "Objector is also represented by Christopher Bandas, with Bandas Law Firm, PC, 500 N. Shoreline, Corpus Christi, Texas 78401, as his general counsel in objecting to the settlement. Mr. Bandas does not presently intend on making an appearance for himself or his firm." At no time did Bandas file an appearance or sign a pleading.

¶ 17    Bandas's objection on behalf of Stewart argued that class counsel's attorney fees were excessive and class members had received insufficient information in the class notice regarding the settlement terms. After class counsel's response, Stewart added an objection to the amount of the settlement.

¶ 18    At the fairness hearing, the Edelson PC firm argued that the objection was a "cut and paste job" filed by a professional objector. Thut's total oral argument consisted of a single sentence, "We are resting on our papers."

¶ 19    Judge Kennedy affirmed the certification of the settlement class, overruled Stewart's objection, determined that class notice provided adequate information, and found the settlement agreement "fair, reasonable, and adequate." As to attorney fees, she found "no basis to require a net benefit analysis or a Lone Star [*sic*] cross-check or to supervise the allocation of fees," and approved $5,382,000 for attorney fees and expenses, representing a fee of 39% of the settlement amount, as "within the range of reasonable fees."

¶ 20                                    Rule 137 Sanctions

¶ 21    The next month, Edelson PC moved for sanctions against Bandas and Thut under Rule 137. Edelson PC maintained that Bandas and Thut filed Stewart's objection for an improper purpose, namely, to elicit attorney fees without providing any benefit to the class or informing the court of their improper purpose. Bandas and Thut retained separate counsel for the hearing on the Rule 137 motion. On January 31, 2017, Freeborn & Peters LLP filed an appearance on behalf of Bandas, along with a motion challenging the court's jurisdiction over him (735 ILCS 5/2-301 (West 2016)) and asserting the sanctions motion fails to state a claim under section 2-615 of the Code of Civil Procedure (*id.* § 2-615). The trial court construed the 2-615 motion as a motion to strike the sanctions motion.

¶ 22    Edelson PC argued:

> "Ultimately he, you know, Mr. Bandas, got us to a mediation and basically said, 'I'm going to—I can delay the settlement which will cost the class and class counsel money. And, in exchange for me not doing that, you can pay me'—I think his first demand was near half a million dollars. We ultimately agreed to pay him $225,000 so he wouldn't appeal this objection."

Edelson PC also argued that Bandas's "game" was to enlist other attorneys to sign documents, even though he wrote "every single document in this case," and not sign the objection. As to Thut, Edelson PC argued he was responsible for Bandas's actions because he "signed everything without reviewing it."

¶ 23    Bandas's counsel admitted Bandas had "participated in the mediation" and had prepared the first draft of the objection and stated that "there was input from others."

¶ 24    On May 19, 2017, Judge Pamela McLean Meyerson ruled on the Rule 137 motion for sanctions, noting

> "The objection to the settlement was prepared by Mr. Bandas and it was reviewed, signed, and filed by Mr. Thut. Judge Kennedy had overruled the objection and

approved the settlement on November 14th, 2016. At that time there were some arguments about improper motives of the objector, but she stated that this court attempted to look only to the merits and makes no determination about any untoward motive behind Mr. Stewart's objection."

¶ 25   Edelson PC requested sanctions (i) striking the objection; (ii) requiring Bandas to obtain admission to the bar of this state before representing any future clients in Illinois; and (iii) imposing monetary sanctions or, alternatively, amending the judgment to note that the objection had been resolved by settlement, essentially enforcing Bandas's alleged demand of $225,000 to drop the appeal. Judge Meyerson refused to strike the objection on the basis that Judge Kennedy had overruled it. Judge Meyerson then found that Rule 137 sanctions did not apply to Bandas because he did not sign the objection and had not filed an appearance in this jurisdiction, but suggested filing a complaint with the ARDC about Bandas not having been admitted *pro hac vice*.

¶ 26   Regarding Thut, Judge Meyerson ordered an evidentiary hearing limited to the issue of whether Thut filed the objection for an improper purpose: "My holding is that I do need more evidence and I will set an evidentiary hearing, but it's going to be strictly limited. I mentioned what the sanctions were that have been requested. The only sanction that I will consider at this point is a monetary sanction. I will not strike the objection because it's already been overruled by Judge Kennedy. I won't require anything of Mr. Bandas because it is only with respect to Mr. Thut, and I will not enforce the alleged settlement as a sanction because while Plaintiff asked me to enforce the settlement as an alternative sanction, Plaintiff also says that the mediation was a sham and that the settlement agreement [with the objector] is the product of extortion."

¶ 27   Edelson PC served Stewart with an Illinois Supreme Court Rule 237(b) (eff. July 1, 2005) notice to appear at the evidentiary hearing. Thut, as Stewart's counsel, moved to quash Stewart's appearance. The court denied the motion, and ordered Stewart's appearance.

¶ 28                     Rule 137 Sanctions Evidentiary Hearing

¶ 29   Before the hearing, Thut moved *in limine* to bar any testimony or evidence regarding other class action cases in which he served as objector's counsel or in which sanctions were sought against him.

¶ 30                             *Edelson's Testimony*

¶ 31   At the hearing, attorney Jay Edelson, of Edelson PC, testified that he represented the class and lead negotiations to resolve Stewart's objection. In October 2016, he called Thut to discuss the objector's request for more information to assess the settlement's reasonableness. Thut "responded with impatience," did not seem to understand that he had made that objection, and he didn't care." Thut responded that he "should speak to his co-counsel [Bandas] who's really leading the case." Thut also said Bandas was "calling all of the shots." After some discussion about inaccuracies in the objection, Thut "started swearing" and, eventually, hung up on him.

¶ 32   Thut, in a letter dated October 27, 2016, to Jay Edelson, stated that Bandas served as lead counsel, made all the decisions, and would move to be admitted *pro hac vice* in Illinois.

¶ 33

¶ 34     Edelson PC attorney Rafey Balabanian testified that he knew Stewart acted as a "professional objector." He noted that Stewart's objection described Bandas to be "general counsel," and he believed Stewart's objection indicated Bandas intended to seek *pro hac vice* admission, which Bandas never did. (The objection states, "Mr. Bandas does not presently intend on making an appearance for himself or his firm.") Balabanian said Thut repeatedly told him that Bandas represented Stewart.

¶ 35     Balabanian spoke with Thut outside Judge Kennedy's courtroom after the initial final fairness hearing,

> "Judge Kennedy entered and continued the motion for final approval. Mr. Thut left the courtroom rather abruptly. I recall I walked out after him. I told him that—I reminded him about the contents, essentially, of the letter that my partner had sent to him on, I think, October 18th, expressing that Christopher Bandas was a serial professional objector, that he filed objections for the improper purpose of extorting fees for himself as proved, and that if he persisted in acting as counsel for Mr. Stewart, that we would likely sue him for that conduct."

Thut responded by calling Balabanian "Junior" and saying Balabanian should talk to Bandas because "he was calling the shots."

¶ 36     After the hearing at which Judge Kennedy approved the settlement, Balabanian spoke with Thut about withdrawing from the case. Thut said Balabanian should speak to Bandas about resolving the case because "he's the one running the show" and "he speaks for us." Balabanian denied chasing Thut down the hall and asking him to resolve the objection to avoid an appeal.

¶ 37     Next, Bandas returned a telephone call from Balabanian to discuss "potentially resolving" Stewart's objection. Balabanian wanted to talk about the objection because he thought they had an "understanding" that "we don't pay professional objectors." Bandas "became irritated" and called the subject "nonsense," then hung up. A few days later, Balabanian e-mailed Bandas to again inquire about resolving the objection. Bandas responded that he did not "trust" Balabanian and they would need to communicate through a mediator.

¶ 38     Balabanian e-mailed Bandas on November 30 about mediation. Bandas responded, suggesting a mediator, Rodney Max. Bandas e-mailed Max (copying Balabanian) that he represented the objector "and soon-to-be appellant" and Balabanian for the settlement class and Bandas for Stewart, had agreed to mediate fees for Bandas.

¶ 39     Then, Max and Bandas spoke by telephone, followed by Max relating to Balabanian a demand from Bandas "to his group" of between $225,000 and $457,000. The demand did not seek any alterations to the class settlement. Balabanian understood this to mean the objection would "potentially" be resolved in exchange for a payment. Balabanian did not know if the demand included any payment to Stewart.

¶ 40     Balabanian asked Max for Bandas's justification for the requested payment, explaining that a payment without any relief for the class was inappropriate and improper. Bandas's response to Max was that he had no obligation to improve the settlement on behalf of the class, he represented only his client's interest, and the payment demand had nothing to do with the time he put into the case. Balabanian "felt as though we were being extorted" and made no counteroffer but asked if "$225,000 would actually settle the matter." Balabanian understood this to mean that if his firm paid $225,000, Bandas and Thut would not pursue an appeal. Max

confirmed an agreement between class counsel and Bandas for the $225,000. When Max informed Bandas of Edelson PC's intent to seek court approval of the payment as required by statute (735 ILCS 5/2-806 (West 2016)), Bandas responded that disclosure of the mediation agreement could not be made to anyone, "including the court."

¶ 41    An objection to a question regarding Bandas's reputation in the legal community was sustained by the trial court.

¶ 42    On cross-examination, Thut's lawyer questioned Balabanian, eliciting testimony that Bandas's conduct as a serial objector was well-known to the class action community.

*Thut's Testimony*

¶ 43

¶ 44    Thut testified that before this case, he had been co-counsel with Bandas on objections involving three class action cases; two in federal court, and one in Illinois state court. Bandas was admitted to practice in federal court so he would handle appeals in those cases. As for the Gannett settlement, Bandas called Thut on the morning of October 21, 2016, the deadline for objections, and they had a five-minute conversation about Stewart's need for representation. Thut received Bandas's objection by e-mail at 1 p.m. Thut checked the settlement website, read the objection and exhibits, and called Bandas back. Thut said he asked Bandas, "Is everything in here true and correct?" and "Did this guy sign this?" After Bandas answered "absolutely" and "yes, he did," Thut "hopped in [his] car" and "flew down" to the Skokie courthouse to meet the filing deadline. Thut filed the objection at 4:30 p.m.

¶ 45    Thut did not review any case law. He was satisfied that Stewart's objection was "factually accurate and warranted by existing law." Thut did not have a retainer agreement with Stewart, and he did not know whether Bandas and Stewart had a retainer agreement but assumed they did.

*Trial Court's Ruling*

¶ 46

¶ 47    The trial court found by a preponderance of the testimony that the objection was not filed for an improper purpose. The trial court further declined to grant the Rule 137 motion for sanctions.

Stewart's Contempt Finding

¶ 48

¶ 49    On the day of the hearing, July 19, 2017, Stewart failed to appear. Judge Meyerson found Stewart to be in direct criminal contempt and imposed a $500 fine. But the written order entered on July 20 read that Stewart had been found

> "in indirect criminal contempt of court for his knowing failure to appear at the evidentiary hearing on July 19, 2017, in violation of the Court's Orders of June 30 and July 19, 2017. As a sanction, Mr. Stewart is ordered to pay a fine in the amount of $500 to the Clerk of the Circuit Court of Cook County within 30 days of the date of this Order. In addition, the Court strikes Mr. Stewart's objection to the settlement in this matter (which objection was previously overruled)."

¶ 50    On July 24, on Clark and Schlossberg's motion, Judge Meyerson withdrew the July 20 order, finding Stewart in direct criminal contempt of court to conform to her oral pronouncement.

¶ 51    Stewart's Notice of Appeal referenced only the July 20 order that found him in indirect criminal contempt. His Notice of Appeal does not mention or refer to the July 24 order. In his prayer for relief he "requests that the Appellate Court reverse the November 14, 2016 Order overruling his objection and reverse the July 20, 2017 Order finding Mr. Stewart in Contempt, imposing a $500 on him, and striking his objection."

¶ 52                                        Analysis
¶ 53                              Stewart's Notice of Appeal
¶ 54    We have an independent duty to review our jurisdiction over an appeal and dismiss when it does not exist. *Vines v. Village of Flossmoor*, 2017 IL App (1st) 163339, ¶ 8 (citing *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984)). Illinois Supreme Court Rule 303(b)(2) provides that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." Ill. S. Ct. R. 303(b)(2) (eff. June 4, 2008). Without a properly filed notice of appeal, the appellate court lacks jurisdiction over the matter and must dismiss the appeal. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011). A notice of appeal confers jurisdiction on the appellate court to consider only the judgments or parts of judgments specifically identified in the notice. *Corah v. The Bruss Co.*, 2017 IL App (1st) 161030, ¶ 20 (citing *General Motors Corp.*, 242 Ill. 2d at 176).

¶ 55    The July 20 order found Stewart in "indirect criminal contempt." The July 24 order withdrew the July 20 order and found Stewart in "direct criminal contempt." Stewart's notice of appeal references only the withdrawn July 20 order and Judge Kennedy's November 14, 2016, order overruling his objection to the settlement.

¶ 56    Stewart's insurmountable problem is that Judge Meyerson withdrew the July 20 order and issued a different order on July 24, superseding the order specified in his notice of appeal. Under Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017), an appellant must "specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." The appellate court has jurisdiction only to review the judgments or parts of judgments identified, or inferred from, the notice of appeal. *City of Chicago v. Concordia Evangelical Lutheran Church*, 2016 IL App (1st) 151864, ¶ 70. Further, a notice of appeal will be deemed to include an unspecified interlocutory order when the interlocutory order was a step in the procedural progression leading to the judgment specified in the notice. *Id.* In *City of Chicago*, the trial court's ruling on a motion *in limine* was a step in the procedural progression leading to the final order specified in the notice. *Id.* ¶ 71. Here, the order specified in the notice, the withdrawn order, preceded the order that held Stewart in contempt. The July 20 order, having been withdrawn, no longer exists and cannot be the basis for an appeal. See *Kelch v. Watson*, 237 Ill. App. 3d 875, 877 (1992) ("The effect of a vacated order is that of a void order. Black's Law Dictionary defines 'vacate' as follows: '[t]o annul; to set aside; to cancel or rescind. To render an act void; as, to vacate an entry of record, or a judgment.' (Black's Law Dictionary 1548 (6th ed. 1990).").

¶ 57    Finally, the notice filed on August 15, 2017, referenced four orders: November 14, 2016; June 30, July 17, and July 20, 2017. During oral argument, Thut represented to this court that the proper order (the July 24 order) was *attached* to the notice of appeal. Contrary to Thut's statement, not only did the notice of appeal not reference or attach the July 24 order, but none

- 8 -

of the four orders referenced as exhibits in the body of the notice were attached either. The notice of appeal in the record consists of two pages without any attachments.

¶ 58    We must comply with the Illinois Supreme Court Rules governing appeals, and neither a trial court nor an appellate court has the authority to excuse compliance with the filing requirements. *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143, 150 (1994). Thus, we lack jurisdiction to consider Stewart's appeal.

¶ 59                                    Class Counsel's Cross-Appeal

¶ 60    Class counsel cross-appeals (i) the order denying sanctions under Rule 137 against Bandas; (ii) the evidentiary rulings excluding evidence, including the grant of Thut's motion *in limine* related to objections to class action settlements in which Thut was counsel; and (iii) the trial court's order denying sanctions under Rule 137 against Thut. Class counsel asks that we remand for a new evidentiary hearing.

¶ 61    After thoroughly reviewing the record, including the transcripts and pleadings in the trial court, we recognize the cross-appeal for what it is—an internecine clash between class counsel and objector counsel, between Edelson PC and Bandas-Thut. So we refer to the Edelson PC firm rather than the named plaintiffs because the cross-appeal, at its core, is a feud that the Edelson PC firm has with objector's counsel. This is nothing new to class action litigation; an objector by challenging one or more aspects of the settlement transforms the fairness hearing into an adversarial proceeding. And, from time to time, as here, objections are not class member driven but driven by attorneys interested in lining their own pocketbooks. Stewart was plucked by an intermediary, a disbarred lawyer to boot, for Bandas-Thut.

¶ 62    Edelson PC claims that Bandas-Thut's motive for objecting was nothing short of disingenuous and Bandas-Thut interposed the last-minute objection for their own pecuniary interests, their own self-interests; in other words, to extort a fee for themselves. For this reason, Edelson PC moved for Rule 137 sanctions against Bandas-Thut, asserting that the objection was filed for "an improper purpose." Essentially, Edelson PC depicts Bandas-Thut as hold-up artists deliberately manipulating the legal system to collect an unearned bonanza at Edelson PC's expense. This is self-serving because here every dollar for fees reduces what is available to class members and, accordingly, is at the class members' expense.

¶ 63                               Illinois Supreme Court Rule 137 Sanctions

¶ 64    Edelson PC asserts error in the July 19, 2017, granting of Thut's motion *in limine* to exclude all evidence related to other objections to class action settlements in which Thut was counsel. According to Edelson PC, by so doing, the trial court excluded certain evidence demonstrating Thut's knowledge of the extortionate purpose of the objection. Edelson PC argues that the trial court failed to follow procedures required by the Attorney Act (705 ILCS 205/1 (West 2014)), thereby allowing Bandas and Thut to file documents "in a manner that avoids any attorney taking responsibility for their contents."

¶ 65    Rule 137 requires every pleading, motion, and other document of a party represented by an attorney to be signed by at least one attorney of record.

> "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted

- 9 -

by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018).

(We do not condone the use of sexist language; the pronouns should be reconfigured to refer to both sexes or, better yet, be gender-free. We urge the supreme court to substitute gender-neutral language.) Rule 137 further provides that if a document is signed in violation of this rule, the court, either on a motion or its own initiative, may impose on the person who signed it "an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other document, including a reasonable attorney fee." *Id.*

¶ 66 The supreme court designed Rule 137 to prevent abuse of the judicial process by sanctioning parties who file vexatious and harassing actions based on unsupported allegations of fact or law. *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217 (2007); see *Sanchez v. City of Chicago*, 352 Ill. App. 3d 1015, 1020 (2004) ("The purpose of Rule 137 is to prevent the filing of false and frivolous lawsuits."). The purpose is not, however, to punish parties "simply because they have been unsuccessful in the litigation." *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1050 (1999). Using an objective standard, the trial court must evaluate whether a party made a reasonable inquiry into the facts and law supporting his or her allegations. *Dismuke*, 378 Ill. App. 3d at 217. Penal in nature, Rule 137 is strictly construed, and courts reserve sanctions for egregious cases. *Webber v. Wight & Co.*, 368 Ill. App. 3d 1007, 1032 (2006). The party seeking sanctions for a violation of the rule bears the burden of proof and must show that the opposing party made untrue and false allegations without reasonable cause. *Stiffle v. Baker Epstein Marz*, 2016 IL App (1st) 150180, ¶ 32.

¶ 67 When considering the propriety of Rule 137 sanctions, a reviewing court determines whether (i) a trial court's ruling was based on adequate information, (ii) valid reasons appropriate to the case are identifiable, and (iii) the ruling logically follows from applying the reasons stated to the particular circumstances. *Berg v. Mid-America Industrial, Inc.*, 293 Ill. App. 3d 731, 737 (1997). Before imposing sanctions, a hearing must be conducted to afford the parties an opportunity to present evidence to support or rebut the claim and to allow them to articulate their respective positions. *Id.* at 736; see *Century Road Builders, Inc. v. City of Palos Heights*, 283 Ill. App. 3d 527, 531 (1996) ("An evidentiary hearing should always be held when a sanction award is based upon a pleading filed for an improper purpose, rather than one which is merely unreasonable based on an objective standard."). The ruling on the motion *in limine* foreclosed Edelson PC from presenting evidence of the relationships between serial objector Stewart and Texas attorney Bandas, who has a history with courts across the country of acting frivolously, vexatiously, and in bad faith. See *infra* ¶ 70.

¶ 68 Thut, as Stewart's Illinois attorney, argues that he should not be held responsible for Bandas's actions, despite signing the objection. Thut avers the objection to the settlement was proper and that Judge Kennedy overruled Stewart's objection but declined to find the objection frivolous "or impute untoward motives toward Thut."

¶ 69 There are two ways an objector might be paid: first, "by raising the value of a class action settlement and receiving a percentage of the increase in value or a fixed-payment for having improved the settlement" or, "on the other hand, he might intervene and cause expensive delay in the hope of getting paid to go away. The former purpose for intervening would be entirely

proper, while the latter would not." *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003). The attempt to intervene might not be frivolous, but the court must decide whether sufficient evidence supports the trial court's conclusion regarding improper purpose. *Id.* at 659. The pattern of conduct engaged in by Bandas, Thut, and Stewart is relevant to the objection's possible improper purpose of seeking attorney fees with the bare minimum of effort, expense, and time.

¶ 70    Bandas-Thut, with Stewart as the objector, have used this strategy in multiple cases in different states. This case was the impetus for the federal lawsuit brought by Edelson PC accusing the defendants of various racketeering and conspiracy violations of federal statutes. We take judicial notice of that proceeding. *Edelson PC v. The Bandas Law Firm PC*, No. 16 C 11057, 2018 WL 3496085, at \*2 (N.D. Ill. July 20, 2018). Plaintiff Edelson PC accused Bandas, Thut, Stewart, and 20 unnamed John Does of being "vexatious litigants" who allegedly recruit "sham" objectors to frivolously object, appeal its denial, settle out of court, then withdraw as soon as class counsel agrees to a nominal amount in "attorneys' fees." As noted in Judge Pallmeyer's ruling in *Edelson PC*, "courts nationwide have denounced Defendants' behavior," specifically Bandas, Thut, and Stewart. The *Gannett* case was cited as one of 15 lawsuits since 2009 in which Bandas, Thut, and Stewart have repeated this same basic pattern—frivolously object, appeal its denial, settle out of court, and withdraw. See *id.* ("Nevertheless, courts across the country have excoriated Defendants' exploitative, rent-seeking behavior in cases in which their involvement has come to light."). One federal judge found that "Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain [and] has been excoriated by Courts for this conduct." *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 281 F.R.D. 531, 533 (N.D. Cal. 2012). Another federal judge described Mr. Bandas as "a known vexatious appellant" who has been "repeatedly admonished for pursuing frivolous appeals of objections to class action settlements." *In re General Electric Co. Securities Litigation*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014); see, *e.g.*, *In re Oil Spill by the Oil Rig "Deepwater Horizon"*, 295 F.R.D. 112, 159 n.40 (E.D. La. 2013); *Garber v. Office of the Commissioner of Baseball*, No. 12-CV-03704, 2017 WL 752183 (S.D.N.Y. Feb. 27, 2017).

¶ 71    The same pattern of "rent-seeking behavior" expressed in *Edelson PC* exists here. An order denying Rule 137 sanctions will not be disturbed on review absent an abuse of discretion. *Oviedo v. 1270 S. Blue Island Condominium Ass'n*, 2014 IL App (1st) 133460, ¶ 46 (citing *Mohica v. Cvejin*, 2013 IL App (1st) 111695, ¶ 47). But our deferential standard of review does not prevent this court from independently reviewing the record to determine whether the facts warrant an abuse of discretion finding. *Id.* Here, as in *Oviedo*, "the better course is to allow the trial court, on consideration of our views" regarding the claims of an improper purpose as the basis for Stewart's objection, to revisit the request for sanctions. *Id.* Therefore, we vacate the order denying the motion for Rule 137 sanctions and remand this matter to the trial court. We direct the trial court to conduct a new hearing with admission of evidence of similar conduct in other cases to determine whether the objection was indeed filed for an improper purpose.

¶ 72                            Unauthorized Practice of Law

¶ 73    The Attorney Act requires a license to practice law in Illinois, and only a licensed attorney can "receive any compensation directly or indirectly for any legal services." 705 ILCS 205/1

(West 2014); see also Ill. R. Prof'l Conduct (2010) R. 8.5(a) (eff. Jan. 1, 2010) ("A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction."). Section 1 of the Attorney Act permits a contempt sanction for the unauthorized practice of law, "in addition to other remedies permitted by law and shall not be construed to deprive courts of this State of their inherent right to punish for contempt or to restrain the unauthorized practice of law." 705 ILCS 205/1 (West 2014). The Attorney Act was intended to prevent the practice of a profession by those who are not licensed. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 25 (2005). No private right of action exists under the Attorney Act, but other attorneys licensed in Illinois have standing to bring an unauthorized practice of law cause of action because the practice of law by unlicensed persons infringes on the rights of those who are properly licensed. *Id.* at 26 (citing *Richard F. Mallen & Associates, Ltd. v. Myinjuryclaim.com Corp.*, 329 Ill. App. 3d 953, 956 (2002)).

¶ 74    Bandas claims there is no basis to sanction him because he is a nonparty and a nonattorney of record and he did not sign any pleadings. Responding to Edelson PC's argument, Bandas asserts Thut was Stewart's attorney of record and signed the objection. Bandas further asserts Rule 137 cannot apply to impose sanctions on him and, thus, the trial court did not abuse its discretion in refusing sanctions.

¶ 75    Bandas hides behind the narrow interpretation of Rule 137 as limited to those attorneys who sign a pleading or other document. First, Stewart's objection, filed October 16, 2016, identifies Bandas, with Bandas Law Firm, PC, in Corpus Christi, Texas, as his general counsel in objecting to the settlement. Stewart's objection stated further: "Mr. Bandas does not presently intend on making an appearance for himself or his firm." And Bandas unquestionably provided Stewart legal services that constitute the practice of law in Illinois and subject him to the personal jurisdiction of this Court, including (i) soliciting a disbarred lawyer to arrange for Stewart to serve as an objector in Illinois; (ii) agreeing to represent Stewart in the Illinois proceeding, as Stewart's objection acknowledges; (iii) drafting Stewart's objection and listing himself as Stewart's lawyer in the Illinois proceeding; (iv) contacting Thut to appear in his stead in the Illinois proceeding; (v) representing Stewart in discussions with class counsel regarding Stewart's objection, by phone and by e-mail; and (vi) entering into negotiations with class counsel and, apparently, agreeing to resolve this matter solely in exchange for $225,000 in attorney fees. In addition, Thut repeatedly informed class counsel that Bandas called the shots, and his role was limited, so limited, in fact, that at the final hearing Thut made no argument or any other comment regarding the objection.

¶ 76    By not signing or appearing in court, Bandas has succeeded in circumventing Rule 137, but that does not relieve him of responsibility for his undisputed representation of Stewart in Illinois.

¶ 77    In ruling on the motion for sanctions, the trial court noted "[t]he objection to the settlement was prepared by Mr. Bandas and it was reviewed, signed, and filed by Mr. Thut." The trial court found, however, it had no jurisdiction to sanction Bandas, suggesting the proper route to pursue sanctions was with the Illinois ARDC. In "a case before a court of the State of Illinois," the lawyer must still register with the ARDC, be admitted *pro hac vice*, and file an appearance. Ill. S. Ct. R. 707(c)(1) (eff. Feb. 1, 2018); see also Ill. S. Ct. R. 13, Committee Comments (adopted June 14, 2013) (noting limited scope appearance applies to attorneys appearing for "settlement negotiations"). At the very least, subsections (1) and (6) of Rule 13(c) require

- 12 -

Bandas to have filed a limited scope appearance (after being admitted *pro hac vice* under Rule 707). See Ill. S. Ct. R. 13(c)(1), (6) (eff. July 1, 2017); R. 707 (eff. Feb. 1, 2018).

¶ 78 The Illinois Supreme Court possesses the authority to regulate the practice of law, but no all-embracing definition defines its meaning. *Grafner v. Department of Employment Security*, 393 Ill. App. 3d 791, 797-98 (2009). A "generally accepted definition of the term exists," however, as " 'the giving of advice or rendition of any sort of service by any person, firm or corporation when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill.' " *Id.* at 798 (quoting *People ex rel. Chicago Bar Ass'n v. Barasch*, 406 Ill. 253, 256 (1950)). Bandas's method of *not* applying and appearing *pro hac vice* is designed to escape responsibility by appearing not to practice law in this jurisdiction.

¶ 79 Bandas was named as Stewart's counsel from the inception of proceedings; this status never changed and presents this court with the conundrum of Bandas filing an objection to reap monetary benefits in an Illinois case, and doing all the substantive work, while hiding behind the cloak of Rule 137.

¶ 80 But, Bandas cannot avoid responsibility so easily. Rule 5.1(c) of the Illinois Rules of Professional Conduct of 2010 provides,

> "A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:
>
> (1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or
>
> (2) the lawyer *** has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action." Ill. R. Prof'l Conduct (2010) R. 5.1(c) (eff. Jan. 1, 2010).

The committee comments indicate paragraph (c) "expresses a general principle of personal responsibility for acts of another" and references Rule 8.4(a) regarding misconduct. Ill R. Prof'l Conduct (2010) R. 5.1 cmt. 4 (eff. Jan. 1, 2010); see Ill. R. Prof'l Conduct (2010) R. 8.4(a) (eff. Jan. 1, 2010) ("It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.").

¶ 81 We turn to Thut's actions. Assisting another in the unauthorized practice of law is also the unauthorized practice of law. Ill. R. Prof'l Conduct (2010) R. 5.5(a) (eff. Jan. 1, 2010). The Illinois Rules were adopted in 1990 and modeled after the American Bar Association Model Rules of Professional Conduct. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 179 (1997). Foreign lawyers "not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in [Illinois,]" but they must associate with an admitted lawyer "who actively participates in the matter." Ill. R. Prof'l Conduct (2010) R. 5.5(c)(1) (eff. Jan. 1, 2010).

> " 'The signing attorney cannot leave it to some trusted subordinate, or to one of his [or her] partners, to satisfy himself [or herself] that the filed paper is factually and legally responsible; by signing he [or she] represents not merely the fact that it is so, but also the fact that he [or she] personally has applied his [or her] own judgment.' " *Bachmann*

*v. Kent*, 293 Ill. App. 3d 1078, 1086 (1997) (quoting *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 125 (1989)).

Here, the documents were prepared by Bandas and signed by Thut, who admittedly did not review or take an active part in the case. By failing to adequately investigate the basis for the objections to the proposed settlement before filing, Thut did not use his own judgment, nor did Bandas adequately supervise his actions.

¶ 82   The annotated comments to the American Bar Association's Model Rules of Professional Conduct Rule 5.5 note the following: "Lawyers who work with out-of-state lawyers risk being deemed to have assisted in them in the unauthorized practice of law." Annotated Model Rules of Prof'l Conduct R. 5.5, at 523 (Am. Bar Ass'n 2015); see, *e.g.*, *In re Lerner*, 197 P.3d 1067 (Nev. 2008) (lawyer allowed employee licensed only in Arizona to conduct initial consultations, decide whether to accept representation, negotiate claims, and serve as clients' sole contact with firm); *In re DuBre*, 656 S.E.2d 343 (S.C. 2007) (managing lawyer of out-of-state collection firm's South Carolina office signed firm's pleadings so they could be filed in state and took no other action in those cases, which were handled by out-of-state lawyers).

¶ 83   Exceptions to the rule enable an out-of-state attorney to participate in pending litigation, and include a co-counsel situation where representation is undertaken in association with an attorney admitted to practice in the jurisdiction and who actively participates in the representation. Peter J. Walsch, *Multijurisdictional Practice of Law Issues in Estate Planning*, 40 Est. Plan. 23, 29 (June 2013). For the "temporary basis" to apply, "the affiliation with the local attorney must be temporary." *Id.*

> "A local attorney serving as a 'mere conduit' to an out-of-state attorney could face discipline for 'assisting in unauthorized practice of law.' For example, in *In Re DuBre*, [656 S.E.2d 343 (S.C. 2007)], an attorney was disciplined for an association with an out-of-state *** law firm through which the attorney lent his name to the pleadings filed within the state but substantially all substantive work in the matters was done at the office of the out-of-state law firm. The local attorney may need to implement the action recommended by the out-of-state attorney so that the local attorney has the opportunity to review all such actions and protect the client against any advice which falls below the level of competence." *Id.*

The situation described is akin to that presented here, with the out-of-state attorney doing all the substantive work and the local counsel filing the objection a few scant hours after first hearing of it via telephone.

¶ 84   Moreover, Thut admitted that he did not have a retainer agreement with Stewart. As Thut stated, Bandas was "calling all the shots." Thut was merely the frontman for the objection so that Bandas did not have to sign any pleadings or appear in court. The record does not establish any payment-sharing between Bandas and Thut, but we are mindful that any agreement addressing the division of fees between law firms must comply with Rule 1.5(e), which states:

> "(e) A division of a fee between lawyers who are not in the same firm may be made only if:
>
>> (1) the division is in proportion to the services performed by each lawyer, or if the primary service performed by one lawyer is the referral of the client to another

- 14 -

lawyer and each lawyer assumes joint financial responsibility for the representation;

　　(2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and

　　(3) the total fee is reasonable." Ill. R. Prof'l Conduct (2010) R. 1.5(e) (eff. Jan. 1, 2010).

¶ 85　　Bandas and Thut, and Stewart by extension, have taken advantage of a situation described as "murky" and with "unpredictable" or "sporadic" enforcement, with a "vastly uncertain" scope of jurisdictional restrictions in various states. See Arthur F. Greenbaum, *Multijurisdictional Practice and the Influence of Model Rule of Professional Conduct 5.5—An Interim Assessment*, 43 Akron L. Rev. 729, 731 n.7 (2010) ("Commission member describing the rules governing multijurisdictional practice at that time as 'ambiguous' and 'uncertain' "). Both attorneys have engaged in a fraud on the court.

¶ 86　　We reverse the judgment of the circuit court of Cook County and remand for further proceedings consistent with this opinion. The clerk of our court is directed to forward a copy of this order to the ARDC to determine whether disciplinary action should be taken against Bandas and Thut.

¶ 87　　Reversed and remanded.

¶ 88　　PRESIDING JUSTICE MASON, specially concurring:

¶ 89　　I concur in the result in this case and agree that we lack jurisdiction over Stewart's appeal from the trial court's order finding him in contempt. The failure of Stewart's counsel to perfect an appeal from the July 24, 2017, order precludes us from resolving on the merits issues relating to the November 14, 2016, order overruling his objection to the settlement and the propriety of the trial court's July 20, 2017, order striking that objection, *nunc pro tunc*, as a sanction for Stewart's failure to appear for a hearing on the petition for Rule 137 sanctions against his attorney. I write specially because I nevertheless consider it necessary, as future guidance for trial judges, to comment on the exorbitant fees awarded to class counsel and the lack of any meaningful examination by the trial court of the justification for those fees.

¶ 90　　As noted, a virtually identical class action complaint was originally filed in federal district court in New Jersey on January 2, 2014. According to class counsel's brief on appeal, "[t]he parties litigated the case in that forum for nearly two years." But examination of the court's docket reveals that other than the filing of the complaint and responsive pleadings, there was virtually no "litigation" to speak of. There was no contested motion practice and, in particular, no motion for class certification. The court originally ordered that an initial pretrial conference would be held on July 15, 2014. At the request of the parties, that conference was postponed to October 30, 2014. Although class counsel represent that the parties engaged in "extensive discovery," none of that activity is reflected on the court's docket.

¶ 91　　By September 2015, the parties had agreed to stay the federal case pending mediation. Ultimately, after several extensions of the stay, the federal case was dismissed by stipulation on April 27, 2016. Class counsel's brief explains the reason for the dismissal as based on "the uncertainty surrounding federal subject-matter jurisdiction in TCPA cases at that time." In point of fact, as recited in the stipulation of settlement, class counsel's concern pertained to the

anticipated decision in *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S. Ct. 1540 (2016), a case decided shortly after the parties stipulated to dismiss the federal case. *Spokeo* dealt not with subject-matter jurisdiction but rather with a class plaintiff's ability to demonstrate injury-in-fact as required to establish standing to sue under federal law. In *Spokeo*, the United States Supreme Court determined that publication of allegedly inaccurate information by a website operator was insufficient to confer standing on a putative class representative alleging a "bare procedural violation" of the Fair Credit Reporting Act. *Id.* at ___, 136 S. Ct. at 1549. The court found that the procedural violation unaccompanied by an identifiable, "concrete" injury could not satisfy the injury-in-fact component of standing. *Id.* at ___, 136 S. Ct. at 1548. As applied in this case, the allegation in the New Jersey complaint that the named plaintiff and members of the class had received unsolicited, automated telephone calls, without more, would likely suffer the same fate. Thus, it is apparent that it was not the lack of subject-matter jurisdiction but standing that motivated class counsel to abandon a forum in which the court might determine that the named plaintiff—and hence the class—had not suffered any concrete injury at all.

¶ 92    By the time the New Jersey case was dismissed by stipulation, the parties had participated in two days of mediation in an effort to settle the case. Although the mediation did not immediately produce a settlement, later negotiations resulted in an agreement in principle that called for the federal case to be dismissed and refiled in Cook County. Thus, before the case was filed here, the parties had agreed to settle it.

¶ 93    The case was refiled in Cook County on May 12, 2016. Two months later, on July 12, 2016, the stipulation of class action settlement was signed. The stipulation of settlement was filed in the circuit court on October 7, 2016. In addition to the creation of a $13.8 million settlement fund, the agreement provided that within one year of the settlement's effective date, Gannett would (i) provide "training concerning [Telephone Consumer Protection Act (TCPA)] compliance to key managers who oversee telemarketing calls to consumers" and (ii) "conduct a review of its internal TCPA compliance procedures and the TCPA compliance procedures of any vendor that conducts telemarketing on Gannett's behalf." No enforcement or verification mechanism for this relief is provided for under the settlement. Class counsel also agreed to "limit" their fees to "no more than 39% of the Settlement Fund" or roughly $5.38 million, plus costs, including the cost of administering the settlement.

¶ 94    The trial court preliminarily approved the settlement the following month. We have no way of knowing what, if any, inquiries the trial judge made regarding the "package deal" presented to her as the parties did not bother to bring a court reporter to the hearing. We do know that the parties' appearance on the settlement was, other than routine motions, their first substantive appearance on the case.

¶ 95    As is typical in TCPA cases, less than 2% of the estimated 2.6 million class members responded to notice of the settlement. The 50,000 class members who did file claims can expect to receive, after payment of attorney fees and costs, roughly $150 each. Meanwhile, even if we had jurisdiction, we would have no record to speak of that would enable us to determine whether the more than $5 million in fees class counsel expect to receive are reasonable or appropriate. The trial court did not require counsel to file a fee petition supported by time records showing exactly how much time counsel devoted to the case. As discussed above, the docket in the New Jersey litigation, participation in two days of mediation and negotiation of the settlement agreement, particularly lacking any mechanism to enforce the

nonmonetary relief beyond the modest payments to class members, would not appear to warrant such a generous payday. And while a trial court certainly has discretion to dispense with a lodestar calculation under appropriate circumstances (*Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 244 (1995)), where, as here, the parties present the court with a *fait accompli* and the court has absolutely no familiarity with the background of the litigation, the court abdicates its role as the guardian of the interests of absent class members when it simply accepts counsel's word for it.

¶ 96    Every dollar that goes to class counsel depletes the funds available to compensate class members. See *Baksinski v. Northwestern University*, 231 Ill. App. 3d 7, 15 (1992) ("once an attorney files a petition for compensation from the [class action settlement] fund, his role changes from that of a fiduciary for his clients to that of a claimant against the fund which was created for the benefit of [his] client[ ]"); see also *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994 (9th Cir. 2010); *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (reversing district court's approval of settlement and criticizing court for failing to carefully scrutinize the settlement's terms to ensure class counsel was acting as "honest fiduciaries"). As the settlement fund is non-reversionary, Gannett had no interest in opposing Edelson PC's request for fees and given our conclusion that Stewart's objection was motivated solely by his lawyers' desire to extract a payment from class counsel and not to improve the terms of the settlement for the class, without the trial judge's oversight, absent class members had no one looking out for their interests. See *Baksinski*, 231 Ill. App. 3d at 13 (courts must act with " 'moderation and a jealous regard' " for the rights of absent class members (quoting *Trustees v. Greenough*, 105 U.S. 527, 536 (1881))). And as far as the record shows, the trial court simply accepted class counsel's representation that a 39% fee was appropriate.

¶ 97    I sincerely doubt that a lodestar calculation would have yielded a number that, enhanced by a reasonable multiplier, would remotely approach $5.38 million. And we have nothing upon which to base a conclusion that this case presented particularly risky litigation warranting a significantly higher fee than the traditional 20 to 30% fees commonly awarded in TCPA cases. See *In re Capital One Telephone Consumer Protection Act Litigation*, 80 F. Supp. 3d 781, 798-99 (N.D. Ill. 2015) (conducting TCPA class action settlement analysis of 72 settlements approved since 2010 and finding median fees to be between 17.7 to 33.3% of the settlement); see also *Wilkins v. HSBC Bank Nevada, NA*, No. 14 C 190, 2015 WL 890566, at *11 (N.D. Ill. Feb. 27, 2015) (awarding fees of 23.75% in "average TCPA class action"); *Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *3, *8-10 (N.D. Cal. Apr. 15, 2015) (using lodestar method to award fees which amounted to 13.5% of settlement fund); *Michel v. WM Healthcare Solutions, Inc.*, No. 1:10-cv-638, 2014 WL 497031, at *17 (S.D. Ohio Feb. 7, 2014) (reducing fee award in TCPA class action from one-third of the settlement fund to 15% of the fund).

¶ 98    The trial court's uncritical acceptance of an award of 39% of the settlement fund to class counsel in a case in which the court had no prior involvement encourages the skepticism, cynicism, and distrust of our judicial system so prevalent in society today. I strongly encourage trial judges in future cases to fulfill their critical role as the guardians of the interests of absent class members, to carefully analyze unopposed fee requests that diminish funds available to compensate class members, and to insist that a reviewable record be made of any hearing, including the court's reasons for granting counsel's fee request.